Shawn A. Luiz (6855)
ATTORNEY AT LAW
733 Bishop Street, Suite 1280
Honolulu, HI 96813
Tel. (808) 538-0500
Fax (808) 564-0010
attorneyluiz@gmail.com

*Attorney for Plaintiffs*
**The Babylon Bee, LLC**
**and Dawn O'Brien**

Philip A. Sechler*
DC Bar No. 426358
Mathew W. Hoffmann*
VA Bar No. 100102
ALLIANCE DEFENDING FREEDOM
44180 Riverside Pkwy
Lansdowne, Virginia 20176
T: (571) 707-4655
psechler@ADFlegal.org
mhoffmann@ADFlegal.org
*Motion for pro hac vice admission filed concurrently*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| **The Babylon Bee, LLC** and **Dawn O'Brien**, <br><br> *Plaintiffs*, <br><br> v. <br><br> **Anne E. Lopez**, in her official capacity as Attorney General of Hawaii; **David Chee**, in his official capacity as Chair of the Campaign Spending Commission; **Neal Herbert**, in his official capacity as Vice Chair of the Campaign Spending Commission; **Jon Itomura**, in his official capacity as member of the Campaign Spending Commission; **Barbara Polk**, in her official capacity as member of the Campaign Spending Commission; **Danton Wong**, in his official capacity as member of the Campaign Spending Commission; **Steven S. Alm**, in his official capacity as Prosecuting Attorney for the City and County of Honolulu, <br><br> *Defendants*. | **Case No.** <br><br> **VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** <br><br> ACTION SEEKING STATEWIDE RELIEF |

## INTRODUCTION

1.      In the critical months before the 2024 election, Hawaii criminalized political speech.

2.      Its new law, S2687, threatens jail time, fines, lawsuits, damages, injunctions, attorney's fees, and even a ten-year disqualification from holding public office. It bans digitally created content, like memes or satirical images, that *risks* harming a candidate's reputation or electoral prospects or changing someone's voting behavior.

3.      But precisely that kind of speech receives the utmost protection under the First Amendment as integral to our self-governing society.

4.      Our nation has a lengthy tradition of wide-open political discourse, including satire and parody of political candidates and elected officials.

5.      No other system comports with our nation's commitment to free expression, individual dignity, and choice.

6.      The First Amendment doesn't allow Hawaii to choose what political speech is acceptable.

7.      Plaintiffs The Babylon Bee, a well-known online satirical news site, and Dawn O'Brien, an engaged Hawaii voter, bring this suit to uphold the fundamental right to speak freely in deciding who governs.

## JURISDICTION AND VENUE

8.      This action arises under the First and Fourteenth Amendments to the United States Constitution. This Court has subject-matter jurisdiction pursuant to the Civil Rights Act, 42 U.S.C. § 1983, and 28 U.S.C. §§ 1331 and 1343.

9.     This Court has authority to award the requested declaratory relief under 28 U.S.C. §§ 2201–02 and Fed. R. Civ. P. 57; injunctive relief under 28 U.S.C. § 1343 and Fed. R. Civ. P. 65; and costs and attorney's fees under 42 U.S.C. § 1988 and Fed. R. Civ. P. 54.

10.     Venue lies in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events that give rise to this lawsuit occurred in this district and because Defendants are residents of this district.

## PARTIES

### *Plaintiffs*

11.     Plaintiff The Babylon Bee, LLC ("The Bee") is a Florida limited liability company with a principal place of business in Florida.

12.     The Bee publishes satirical news articles, photographs, and videos on its website (www.babylonbee.com), which averages more than 20 million viewers per month, including viewers in Hawaii.

13.     The Bee also publishes satirical articles, photographs, and videos on online platforms including X (formerly known as Twitter), Facebook, Instagram, Rumble, and YouTube. The Bee has millions of followers and subscribers across these social media platforms, including followers and subscribers in Hawaii.

14.     Dawn O'Brien resides in Honolulu. She regularly posts about politics, elections, and religion on her public Instagram and Facebook accounts.

### *Defendants*

15.     Defendant Anne E. Lopez is the Attorney General of Hawaii and is sued in her official capacity.

16.    Defendant Lopez has the authority to initiate criminal prosecutions and civil actions for violations of S2687. Haw. Rev. Stat. §§ 11-412(e), 11-304(b)(1).

17.    The Hawaii Campaign Spending Commission enforces Hawaii's laws regarding campaign finance and S2687. Haw. Rev. Stat. §§ 11-314, 11-303(g).

18.    The Commission may assess fines, refer for criminal prosecution, and initiate civil actions for violations of S2687. Haw. Rev. Stat. §§ 11-303(g), 11-304(b)(2).

19.    The Commission "consist[s] of five members … appointed by the governor." Haw. Rev. Stat. § 11-311(b).

20.    Defendant David Chee is the Chair of the Campaign Spending Commission. He is sued in his official capacity.

21.    Defendant Neal Herbert is the Vice Chair of the Campaign Spending Commission. He is sued in his official capacity.

22.    Defendant Jon Itomura is a member of the Campaign Spending Commission. He is sued in his official capacity.

23.    Defendant Barbara Polk is a member of the Campaign Spending Commission. She is sued in her official capacity.

24.    Defendant Danton Wong is a member of the Campaign Spending Commission. He is sued in his official capacity.

25.    Defendant Steven S. Alm is the Prosecuting Attorney for the City and County of Honolulu. He is sued in his official capacity.

26.    Defendant Alm has the authority to initiate criminal prosecutions and civil actions for violations of S2687. Haw. Rev. Stat. §§ 11-412(e), 11-304(b)(3).

## FACTS

### I.    Satire has a rich and important history, including in America.

27.    Satire is a distinct type of literature with a history that stretches back to Ancient Rome. Gilbert Highet, *Anatomy of Satire* 24 (1962).

28.    As a genre, satire focuses on topical content or individuals, speaks to particular moments, and generally "deals with actual cases, mentions real people by name or describes them unmistakably (and often unflatteringly)." *Id.* at 5, 13, 16.

29.    Parody is a form of satire that takes original content, imitates it, and then makes the original look absurd through various devices. *Id.* at 13.

30.    The end of satire is often to criticize or mock an idea, event, or person for the purpose of correction and improvement.

31.    Figures such as Horace, Plato (*Menexenus*), Miguel de Cervantes (*Don Quixote*), Voltaire (*Candide*), Jonathan Swift (*Gulliver's Travels*), and George Orwell (*Animal Farm*) have used satire to provide social commentary in order to expose underlying truths.

32.    Satirists "intend[] to shock" their audiences "[b]y compelling them to look at a sight they had missed or shunned" and help them to "realize the truth, and then move[] … to feelings of protest." *Id.* at 20.

33.    In short, satirists "tell the truth with a smile, so that [they] will not repel [people] but cure them of th[eir] ignorance which is their worst fault." *Id.* at 235.

34.    In these ways, satire and parody make audiences do a double-take by convincing them that they are seeing a serious rendering of an original, and then

allowing them to laugh at their own gullibility when they realize that they are really viewing satire or parody.

35.    Through this technique, satirists intend to prompt thought, internal reflection, and public dialogue about the subject of the satire.

36.    To do this effectively, satire and parody leverage the expectations that are created in audiences when they see something in a particular form and juxtapose that realism with the satirical form.

37.    Satire and parody generate their most rhetorical power by leveraging the mimicry of a particular form, event, idea, or person against the heightened dissonance created by the form of satire.

38.    This power comes from satire and parody's proximity to the original.

39.    As the Supreme Court recognized in another context, "[p]arody needs to mimic an original to make its point." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 580–81 (1994).

40.    Because of their effectiveness and appeal, satire and parody have been used throughout American history to express matters of current interest—especially matters of politics and politicians.

41.    From lampooning George Washington and Thomas Jefferson to Donald Trump and Kamala Harris, satire has been used to "tear[] down facades, deflate[] stuffed shirts, and unmask[] hypocrisy" with such consistency that "[n]othing is more thoroughly democratic than to have the high-and-mighty lampooned and spoofed." *Falwell v. Flynt*, 805 F.2d 484, 487 (4th Cir. 1986) (Wilkinson, J., dissenting from denial of rehearing).

## II.    The Babylon Bee is a satirical news source that posts "Fake news you can trust."

42.    The Bee fits well within this longstanding tradition of using satire and parody to speak the truth, expose bad ideas, and encourage societal change.

43.    The Bee's tagline is "Fake news you can trust."

44.    The Bee runs and controls a website that exposes foolishness, mocks absurdity, and highlights hypocrisy in faith, politics, and culture through satire, humor, and parody. *See* The Babylon Bee, https://babylonbee.com (last accessed May 28, 2025).

45.    Millions of people view The Bee's website each month, including around 10,000 active monthly users from Hawaii.

46.    The Bee has accounts on platforms like X, Facebook, Instagram, Rumble, and YouTube where it republishes its articles, posts videos, and republishes third-party content.[1]

47.    The Bee currently has nearly five million followers on X, over two million followers on Instagram, over one and a half million followers on Facebook, nearly half a million followers on Rumble, and nearly two million subscribers on YouTube.

48.    The Bee's articles generate millions of "impressions"—i.e., instances when a user sees its web page or platform post.

---

1 *See* The Babylon Bee, X, https://bit.ly/3N3apJ7; The Babylon Bee, Facebook, https://bit.ly/3XLkpfj; The Babylon Bee, YouTube, https://bit.ly/3XLztcy; The Babylon Bee, Instagram, https://bit.ly/3TLjPgq; The Babylon Bee, Rumble, https://perma.cc/YT9D-3G5V.

49.     The Bee's articles also consistently generate tens of thousands of "likes" and "reposts."

50.     As one example, The Bee posted an article entitled "Disaster Relief Plane Flies Over Hawaii On Way To Ukraine" on X on August 11, 2023. https://perma.cc/PNW3-5C42. The article satirizes the Biden administration's perceived prioritization of aid to Ukraine over aid to Hawaii after the tragic Maui fire.

51.     As of May 30, 2025, the post had accumulated over 1.7 million views, 38,000 likes, and 7,600 reposts.

52.     The Bee posts between six to eight articles on its website during the workweek and three to five articles during the weekends and then republishes those articles on X, Facebook, and Instagram.

53.     The Bee also publishes videos that it creates on YouTube and Rumble.

54.    The Bee posts about various topics, including Hawaii, current events, and religion.[2]





55.    The Bee regularly posts about politics, elections, and politicians.

56.    For example, in the months before the 2024 election, The Bee posted articles about Presidential candidates Donald Trump and Kamala Harris and Vice Presidential Candidates J.D. Vance and Tim Walz.

57.    Copies of these articles and associated images are included in Exhibit A, and the posts are viewable here:

    a.    *Trump Projected To Win In 50-State Landslide After Appearing In Squirrel Costume*, Babylon Bee (Nov. 2, 2024), https://perma.cc/3MTL-VE7R.

---

2 *Trump Indicted For Hawaii Wildfire* (Aug. 10, 2023), https://perma.cc/4989-W54H; *Missions Trip To Hawaii Flooded With Waves Of Selfless Volunteers* (Aug. 12, 2016), https://perma.cc/S9A9-YDV9.

b.    *New 'Kamalexa' Edition Of Amazon Echo Will Just Ramble For 10 Minutes Without Ever Answering Your Questions*, Babylon Bee (Oct. 31, 2024), https://perma.cc/9RA3-9CPW.

c.    *Kids At Tim Walz's Door Disappointed As He Fills Candy Bags With Tampons*, Babylon Bee (Oct. 31, 2024), https://perma.cc/7FBX-RPE8.

d.    *Trump Team Reveals Debate Strategy: Trump Will Cede All His Time To Kamala And Then Quietly Play With His Tamagotchi*, Babylon Bee (Sept. 10, 2024), https://perma.cc/S7HM-BFDP.

e.    *Kamala Responds To Criticism Over Lack Of Policies By Posting Another Truck Stop Junk Food Video*, Babylon Bee (Sept. 6, 2024), https://perma.cc/L7X6-DFY3.

f.    *Trump Prepares For Debate Against Kamala By Going To Bar And Arguing With Drunks*, Babylon Bee (Sept. 5, 2024), https://perma.cc/C7J6-47BX.

g.    *Kamala Harris Unveils New Economic Platform 'We Must Seize The Means Of Production And Execute The Bourgeoisie'*, Babylon Bee (Aug. 18, 2024), https://perma.cc/8TTE-33H8.

h.    *Vance Dons Helmet And Body Armor In Preparation To Run With Trump*, Babylon Bee (July 15, 2024), https://perma.cc/7PWK-2F7E.

58.    The Bee digitally created the images contained in the articles identified in the above paragraph. *See* Ex. A.

59.    In addition to posting about national politicians, as discussed above, The Bee posts about Hawaii politicians.

60.    Copies of these articles and associated images are included in Exhibit A and the posts are viewable here:

a.    *Democrats Ask ACB To Recuse Herself From Any Cases Involving The Constitution*, Babylon Bee (Oct. 26, 2020), https://perma.cc/36TW-RBN2.

b.    *Senator Hirono Demands ACB Be Weighed Against A Duck To See If She Is A Witch*, Babylon Bee (Oct. 14, 2020), https://perma.cc/QYG3-9W6P.

c.    *'Joe Biden Is The Best Choice For Our Nation,' Chants Tulsi Gabbard After DNC Completes Assimilation Process*, Babylon Bee (Mar. 19, 2020), https://perma.cc/M9RS-DQHU.

d.    *Other Candidates Beg Warren Not To Endorse Them*, Babylon Bee (Mar. 6, 2020), https://perma.cc/4L99-XHYD.

e.    *Dems Solemnly Don Tinfoil Hats Before Questioning Barr On Mueller Report*, Babylon Bee (May 1, 2019), https://perma.cc/LZ9U-EPK7.

61.    The Bee digitally created the images contained in paragraph 57.b, c, and e. Ex. A at 3, 6, 10.

62.    For future elections, The Bee intends to continue to create and post content on its own website, X, Facebook, Instagram, YouTube, and Rumble materially similar to the content referenced in paragraphs 57 and 60, meaning The Bee will post digitally created satire and parody about politicians, including Presidential, Vice Presidential, gubernatorial, and senatorial candidates for office

who appear on the ballot in Hawaii, that indicate support or opposition of the candidate.

63.    As with satire and parody more generally, The Bee intends to and desires to have these posts expose bad ideas, cause viewers to reflect on the consequences of those ideas, and prompt viewers to take appropriate action to remedy the consequences of those ideas.

64.    The Bee created the content identified in paragraphs 57 and 60 and creates and will create materially similar content that is intentionally digitally created, knowing that the content is not literally true.

65.    Indeed, the purpose of The Bee's satire and parody—like other satire and parody—is to create content that is not literally true in all respects, and so The Bee knows that at least some of that content is literally false or acts without regard to that literal truth, but The Bee does so anyway to prove a broader point.

66.    The Bee thus follows the traditional path for satire and parody by mimicking the original for maximum effect.

67.    Ironically, some of The Bee's satirical headlines have become actual news stories in time.

68.    To date, over one hundred of The Bee's satirical headlines have later become actual headlines to date. *Cf.* Kassy Dillon, *When satire becomes reality: Nearly 100 Babylon Bee joke stories have come true*, Fox News (Mar. 26, 2023), https://perma.cc/PJF9-7DEN.

69.    Here are two examples, with the satire on the left and the real articles

on the right.[3]







70.    The Bee's critics have denounced its approach.

71.    One critic maintained that "even if the Babylon Bee's satire itself

should not be considered misinformation, its satire draws on and reinforces actual

_____

3 *Compare Xi Jinping Criticizes Trudeau's Heavy-Handed Approach*, Babylon
Bee (Feb. 15, 2022), https://perma.cc/3N7P-4DQS *and 9 Reasons Not To Worry
About The Tanking Economy*, Babylon Bee (Sept. 26, 2022),
https://perma.cc/8JWQ-XQEE *with China slams Canada over Hong Kong, Ottawa
protests*, India Blooms (Feb. 23, 2022), https://perma.cc/FA4M-ZGUN *and*
Michelle Singletary, *7 ways a recession could be good for you financially*, Wash.
Post (Sept. 29, 2022), https://perma.cc/B76H-Y9KF.

misinformation and conspiracy." Parker J. Bach, *Can the Right Make Good Satire Without Collapsing Due to Fake News?* Slate (June 22, 2021), https://perma.cc/FB2X-6KMS.

72.    One article accused The Bee and other satirical sites of "[h]elping [to] spread misinformation on social media." Peter Suciu, *Not Fake News—Satire Is Helping Spread Misinformation On Social Media*, Forbes (Feb. 2, 2024), https://perma.cc/QL9L-QYNV.

73.    One reporter accused The Bee of being a "far-right misinformation site[.]" *New York Times: Far-Right misinformation site The Babylon Bee uses "satire" claim to Protect its presence on Facebook*, Twitchy (Mar. 22, 2021), https://tinyurl.com/yc6ck5sv.

74.    Another reporter called The Bee "dangerous." Libby Emmons, *CNN reporter claims The Babylon Bee is dangerous but The Onion is hilarious*, The Post Millennial (Jan. 7, 2020), https://tinyurl.com/khbcbbax.

75.    Some of The Bee's satirical articles have been mistaken for real news articles.

76.    For example, Donald Trump once presumed a satirical article written by The Bee was a real news article and retweeted it. The article was entitled, "Twitter Shuts Down Entire Network to Slow Spread Of Negative Biden News." David Jackson, *Trump retweets satirical news story about Joe Biden and Twitter*, USA Today (Oct. 16, 2020), https://perma.cc/83LJ-Z5XT.

77.    Fact-checking sites have reviewed The Bee's satirical posts for factual accuracy to determine if the posts are, indeed, satire.

78.    Snopes is one such fact-checker.

79.    Snopes claims to be "the oldest and largest fact-checking site online, widely regarded by journalists, folklorists, and readers as an invaluable research companion." Snopes, About Us, https://perma.cc/LL39-5BKW (captured Sept. 26, 2024).

80.    Snopes fact checks and provides "original investigative reporting" "[w]hen misinformation obscures the truth." *Id.*

81.    Snopes has fact-checked dozens of satirical articles posted by The Bee, including articles posted as recently as August 2024. Snopes, https://perma.cc/E7BB-26SX.

82.    For example, The Bee posted the following three articles.[4]





---

4 *CNN Purchases Industrial-Sized Washing Machine To Spin News Before Publication*, Babylon Bee (Mar. 1, 2018), https://perma.cc/G4EKF9VS; *Ocasio-Cortez Appears On 'The Price Is Right,' Guesses Everything Is Free*, Babylon Bee (Apr. 12, 2019), https://perma.cc/3MXWJ6Q6; and *Ninth Circuit Overturns Death*





83.    Under the guise of preventing "misinformation," Snopes and the newspaper USA Today initially reviewed these articles for accuracy, rated them as "false," and even suggested they were intentionally misleading.

84.    Later, Snopes and USA Today changed course and confirmed that the articles were satire.[5]

85.    USA Today verified that the "satirical article about the 9th Circuit 'overturning' Supreme Court Justice Ruth Bader Ginsburg's death has no basis in fact" after consulting fifteen different sources.

---

*Of Ruth Bader Ginsburg*, Babylon Bee (Sept. 21, 2020), https://perma.cc/9TBH-6HUX.

5 David Mikkelson, *Did CNN Purchase an Industrial-Sized Washing Machine to Spin News?*, Snopes (Mar. 1, 2018), https://perma.cc/BN6Q-3YBP; Dan Evon, *Did U.S. Rep. Ocasio-Cortez Repeatedly Guess 'Free' on TV Show 'The Price is Right?'*, Snopes (Apr. 15, 2019), https://perma.cc/NM62-NXSS; Chelsey Cox, *Fact check: Satirical claim that the 9th Circuit Court of Appeals overturned Ginsburg's death*, USA Today (Sept. 27, 2020), https://perma.cc/93Y9-PZZY.

16

86.    The Bee has also experienced censorship by various platforms because of the content of its posts.

87.    For example, during Justice Barrett's confirmation hearing, Facebook determined that The Bee "incit[ed] violence" by posting a Monty Python-inspired satire piece entitled, "Senator Hirono Demands ACB Be Weighed Against a Duck to See If She Is a Witch." *See* ¶ 60.b. When challenged, Facebook initially refused to change its determination. *See AGAIN! Facebook censors and penalizes The Babylon Bee for the most ridiculous article ever*, Not the Bee (Oct. 20, 2020), perma.cc/7FG5-GENV. Facebook later reversed course to allow the article.

88.    Instagram determined that The Bee's CEO violated Instagram's community guidelines against "harmful false information" and "hate speech or symbols" for sharing a Slate article entitled, "It's About Time for Us to Stop Wearing Masks Outside," along with the comment, "Sane people never did this." *See Babylon Bee CEO posted this to Instagram and they're now threatening to ban him for "harmful false information" and "hate speech." WHAT??*, Not the Bee (Apr. 18, 2021), perma.cc/4WUV-5AYY.

89.    YouTube flagged The Bee as a "violent criminal organization[ ]" and removed its video titled "*If the LEAKED Nashville Shooter Manifesto is legit, what does it say about censorship in the US?*" Seth Dillon (@SethDillion), X (Nov. 8, 2023, 8:44 AM), perma.cc/ZCJ6-4WJ7. Even after The Bee appealed the mischaracterization of the content, YouTube held to its determination that the video violated its violent criminal organization policy. Seth Dillon (@SethDillion), X (Nov. 8, 2023, 10:48 AM), perma.cc/FMF9-R8MY.

90.    Twitter also suspended The Bee's account for "hateful conduct" under its content moderation policies after it named U.S. Assistant Secretary for Health Dr. Rachel Levine the site's "Man of the Year." Seth Dillon (@SethDillion), X (Mar. 20, 2022, 5:42 PM), perma.cc/7M3L-XJGZ.

91.    Twitter refused to reinstate The Bee unless it agreed to delete the tweet.

92.    Because The Bee refused to do so on principle, Twitter did not reinstate The Bee's account.

93.    This incident, among other considerations, culminated in Elon Musk purchasing Twitter to restore free speech on the platform.

94.    Had Twitter not been sold to Musk, The Bee would have remained banned from the platform unless and until it censored itself by deleting the violative tweet. Gabriel Hays, *The Babylon Bee's Twitter account reinstated by Elon Musk after suspension for transgender joke: 'We're back,'* Fox News (Nov. 18, 2022), perma.cc/TU3A-8NGD.

95.    After Musk purchased Twitter (now X), he reinstated The Bee's account almost immediately.

96.    X has not suspended, removed, or taken any adverse action against The Bee's X account since Musk purchased the platform.

97.    Musk significantly amended X's content moderation policy that had been the basis for Twitter's suspension of The Bee's account, and The Bee's content does not violate X's current content moderation policy.

### III.    O'Brien actively engages in online political expression.

98.    Ms. O'Brien resides in Honolulu.

18

99.    She is the Aloha Ambassador to the State of Hawaii, representing the "Choose Aloha" program in 310 schools across the state.

100.    Choose Aloha is the Hawaii affiliate of the Choose Love Movement, which aims to create safer and more peaceful and loving schools by teaching children and adults essential life skills.

101.    O'Brien works with children, teachers, and parents throughout Hawaii to choose love every day through presence, mindfulness, and breathing exercises.

102.    O'Brien is also active online.

103.    She has two accounts on Facebook and one on Instagram. Her accounts are public, so anyone with an internet connection can view her posts. She started one Facebook account to be private for her close friends and another for her public presence. But eventually, she made both public.

104.    She currently has approximately 7,000 followers on her larger Facebook account and 2,400 followers on Instagram.

105.    O'Brien regularly posts on these accounts on issues related to politics, elections, her Christian faith, and her work as Aloha Ambassador.

106.   She has posted digitally altered content, including content from The Babylon Bee, as shown below.

 

107.   She also posts about elections. For example, shortly after the 2024 election, she posted the below digitally altered image of then-presidential candidate Donald Trump.



108.   She also made the below posts in August 2024, during the campaign season.





109.    O' Brien does not support Governor Josh Green's policies.

110.    She has criticized Gov. Green's policies previously on her social media accounts.

111.    For example, on February 2, 2025, she made the below post on Facebook about a bill proposed by Gov. Green.



112.    O'Brien expects Gov. Green to run for reelection in 2026.

113.    From February 2026 through election day, she desires to make posts, including digitally altered posts, opposing his candidacy.

114.    For example, she desires to make the below posts featuring Grok AI-generated images of Governor Green. These images are in Exhibit B.






115.    O'Brien does not intend to deceive anyone with these posts, but she believes that these images can make a point about Gov. Green's policies that would

otherwise be difficult to convey. The images convey O'Brien's opinion that Governor Green implemented draconian policies in response to the pandemic and has signed laws and taken other actions hostile to free speech, including the law at issue in this case, S2687.

116.    O'Brien intends or acts with reckless disregard for the risk that these posts will persuade Hawaii residents not to vote for Gov. Green.

### IV.    S2687 criminalizes political speech.

117.    S2687 provides that "no person shall recklessly distribute … materially deceptive media in reckless disregard of the risk of harming the reputation or electoral prospects of a candidate in an election or changing the voting behavior of voters in an election." Haw. Rev. Stat. § 11-303(a).

118.    "'Distribute' means to convey information by any means." Haw. Rev. Stat. § 11-303(h).

119.    The statute defines "materially deceptive media" as "any information, including any video image or audio, that":

      a.      "Is an advertisement;"

      b.      "Depicts an individual engaging in speech or conduct in which the depicted individual did not in fact engage;"

      c.      "Would cause a reasonable viewer or listener to believe that the depicted individual engaged in the speech or conduct depicted; and"

      d.      "Was created by" artificial intelligence (AI) or other "[d]igital technology." *Id.*

120.   An "advertisement" is "any communication" that:

a.     "Identifies a candidate directly or by implication, or identifies an issue or question that will appear on the ballot at the next applicable election; and"

b.     "Advocates or supports the nomination, opposition, or election of the candidate, or advocates the passage or defeat of the issue or question on the ballot." Haw. Rev. Stat. § 11-302.

121.   A "candidate" is "an individual who seeks nomination for election or seeks election to office." *Id.*

122.   Under Hawaii law a "person acts recklessly with respect to his conduct when he consciously disregards a substantial and unjustifiable risk that the person's conduct is of the specified nature." Haw. Rev. Stat. § 702-206(3)(a).

123.   "A person acts recklessly with respect to a result of his conduct when he consciously disregards a substantial and unjustifiable risk that his conduct will cause such a result." Haw. Rev. Stat. § 702-206(3)(c).

124.   S2687 has three exemptions: disclaimers, broadcasters, and interactive computer services.

125.   First, it does "not apply if the media includes a disclaimer informing the viewer that the media has been manipulated by technical means and depicts appearance, speech, or conduct that did not occur." Haw. Rev. Stat. § 11-303(c).

126.   For video, the disclaimer must appear throughout the entire video, be "clearly visible to and readable," use "letters at least as large as the largest size of

25

any text communication," and be in the same language of the video. Haw. Rev. Stat. § 11-303(c)(1).

127.   For images, the disclaimer must be "clearly visible to and readable," use "letters at least as large as the largest text in the image if the media contains other text," and be in the same language of the video. Haw. Rev. Stat. § 11-303(c)(2).

128.   For audio-only media, the disclaimer must "be read" "[a]t the beginning and end of the media in a clearly spoken manner;" "[i]n a pitch that can be easily heard by the listener;" and in the same language as the audio. Haw. Rev. Stat. § 11-303(c)(3).

129.   If the person generated the media from existing media, the disclaimer must "include a citation directing the viewer or listener to the original sources." Haw. Rev. Stat. § 11-303(c)(4).

130.   Second, S2687 does not apply to a "broadcaster, cable operator, or direct-to-home satellite provider unless it was involved in the creation of the materially deceptive media." Haw. Rev. Stat. § 11-303(b)(1).

131.   Third, S2687 doesn't apply to an "interactive computer service, cloud service provider, or streaming service for content provided by another person" unless the entity knows "that the content is deceptive and intends to deceive a resident of the State." Haw. Rev. Stat. § 11-303(b)(2).

132.   S2687 applies starting the "first working day of February in every even-numbered year through the next general election." Haw. Rev. Stat. § 11-303(a).

133.   It first became effective from July 3, 2024 (when signed by Gov. Green) until November 5, 2024.

134.   It will next be effective from February 2, 2026 to November 3, 2026.

135.   S2687 imposes both criminal and civil penalties.

136.   S2687 makes a first-time violation "a petty misdemeanor." Haw. Rev. Stat. § 11-303(d). Conviction for a petty misdemeanor can carry a sentence of imprisonment of up to 30 days and a fine of up to $1,000. Haw Rev. Stat. §§ 701-107(4), 706-640(1)(e). A petty misdemeanor has a one-year statute of limitations. Haw Rev. Stat. § 701-108(2)(f).

137.   A second violation "within five years of a previous conviction for" S2687 is "a misdemeanor." Haw. Rev. Stat. § 11-303(e). Conviction for a misdemeanor can carry a sentence of imprisonment of up to one year and a fine of up to $2,000. Haw Rev. Stat. §§ 701-107(3), 706-640(1)(d). A misdemeanor has a two-year statute of limitations. Haw Rev. Stat. § 701-108(2)(e).

138.   Violating S2687 "with the intent to cause violence or bodily harm" is "a class C felony." Haw. Rev. Stat. § 11-303(f). Conviction for a class C felony can carry a sentence of imprisonment of up to five years and a fine of up to $10,000. Haw. Rev. Stat. §§ 706-660(1)(b), 706-640(1)(c). This type of class C felony has a three-year statute of limitations. Haw. Rev. Stat. § 701-108(2)(d).

139.   Defendants Campaign Spending Commission members "may assess a fine for a violation" or refer a violation "for criminal prosecution." Haw. Rev. Stat. §§ 11-303(g), 11-302, 11-411, 11-412.

140.   Defendant Attorney General and Defendant Prosecuting Attorney for the City and County of Honolulu "shall prosecute any violation" involving "statewide offices, parties, or issues." Haw. Rev. Stat. § 11-412(e)(2).

141.   Defendant Attorney General and Defendant Prosecuting Attorney for the City and County of Honolulu can prosecute violations of S2687 independent of any action of Defendant Commission members. Haw. Rev. Stat. § 11-412(e)(1).

142.   People convicted under S2687 are "disqualified from holding elective public office" for ten years. Haw. Rev. Stat. § 11-412(d).

143.   S2687 authorizes "depicted individual[s]" or "any organization that represents the interest of voters likely to be deceived by the distribution of materially deceptive media" to bring suit for "general or special damages," "injunctive or other equitable relief," and "attorney's fees and costs" for violations of S2687. Haw. Rev. Stat. §§ 11-304(a), (b).

144.   S2687 does not define "any organization that represents the interest of voters." Many organizations could claim to represent voters' interests, which would entitle them to sue under the law. And any person could create such an organization Thus, S2687 effectively allows anyone to file a lawsuit for an alleged violation of S2687.

145.   S2687 also authorizes Defendant Attorney General, Defendant Commission members, county attorneys or county prosecutors, including Defendant Prosecuting Attorney, and a "candidate for nomination or election to a public office who is injured or is likely to be injured by dissemination of materially deceptive media" to bring suit for "injunctive or other equitable relief." Haw. Rev. Stat. § 11-304(b). Prevailing non-government plaintiffs can also receive "attorney's fees and costs." *Id.*

146.   No limitations period governs civil suits brought under S2687 by Defendants Attorney General or Campaign Spending Commission. Haw. Rev. Stat. § 657-1.5. S2687 has no explicit statute of limitations for civil actions brought by other parties. Either the two-year period for "damage or injury to persons," Haw. Rev. Stat. § 657-7, or the six-year catchall limitations period applies, Haw. Rev. Stat. § 657-1(4).

## V.    The legislature passes S2687 over Hawaii residents' objections that it abridges protected speech.

147.   The Hawaii legislature began considering S2687 in January 2024.

148.   Throughout the legislative process, Hawaii residents and others raised First Amendment concerns about S2687.

149.   Out of 62 individuals who submitted written comments to the Senate Judiciary Committee, 61 opposed the bill. A true and accurate copy of the written comments to the Senate Judiciary Committee is Exhibit C.

150.   Seventeen commenters raised free speech concerns with S2687. Ex. C at 15, 19, 27, 31, 33, 35–36, 44, 47, 52, 55–56, 66, 70, 72, 74.

151.   Twenty-two commenters raised concerns with S2687's vagueness and subjectivity. *Id.* at 16–17, 25, 35–36, 41–44, 47–48, 55, 57, 60–61, 65, 67–71, 73.

152.   The Hawaii Office of the Public Defender opposed the bill because of First Amendment concerns, informing legislators that "[p]eople have a First Amendment right to criticize candidates … and make all kinds of political speech attacking candidates." Ex. D at 6. A true, accurate, and complete copy of all the

written comments to the House Committee on Judiciary and Hawaiian Affairs is Exhibit D.

153.  Out of 33 individuals who submitted timely comments to the House Committee on Judiciary and Hawaiian Affairs, 32 opposed S2687. *Id.* at 13–44.

154.  Ten commenters raised free speech concerns with the bill. *Id.* at 16, 21–22, 29, 31, 32, 40, 41, 42, 44.

155.  Ten commenters also raised vagueness and subjectivity concerns about S2687. *Id.* at 18, 20, 22–23, 28, 30, 32–33, 39, 44.

156.  Additionally, the Motion Picture Association, which members include The Walt Disney Studio Motion Pictures, Netflix Studios, and Warner Bros., asked the Senate Judiciary Committee to add an exemption for "parody and satire." Ex. C at 11.

157.  The Hawaii legislature nonetheless passed S2687 with all 51 House representatives voting in favor and with all 25 senators, except one, also voting in favor.

158.  On July 3, 2024, Gov. Green signed the bill into law, and it became effective immediately.

## VI.    S2687 imposes overwhelming burdens on The Bee and O'Brien, both restricting and compelling their protected speech.

159.  S2687 has imposed and will continue to impose significant pressures and burdens on The Bee and O'Brien's expression.

160.   The terms "[d]istribute" and "advertisement" extend S2687 to apply even to text messages or private online conversations between two people, which makes the statute overbroad.

161.   S2687 also uses vague and overbroad terms that grant Hawaii officials unbridled enforcement discretion.

162.   The vague and overbroad terms include:

a.     "reckless disregard of the risk of harming the reputation or electoral prospects of a candidate … or changing the voting behavior of voters";

b.     "cause a reasonable viewer or listener to believe that the depicted individual engaged in the speech or conduct depicted"; and

c.     "[d]igital technology."

163.   Whether expression falls into these vague and overbroad categories depends on the subjective perceptions of others, including state enforcement officials.

164.   For example, The Bee once posted an article about U.S. Representative Ocasio-Cortez guessing everything was free on the gameshow "Price is Right." *See supra* ¶ 82.

165.   The article generated enough attention from viewers—i.e., the presumptively "reasonable person"—that Snopes deemed it necessary to fact-check the article to determine that it was satirical. *See supra* ¶¶ 83–84.

166.   Snopes, USA Today, and others have mistaken The Bee's satirical articles for real news in the past, and that is likely to continue to happen in the future.

31

167.   Whether content poses a "risk of harming the reputation or electoral prospects of a candidate" is inherently subjective, vague, and overbroad and depends on others' perception of the effect of the content.

168.   S2687 does not define "[d]igital technology" and it could extend to any content created or altered on a computer and any content simply uploaded to the internet.

169.   Because of the vagueness and overbreadth of S2687 and its discretionary terms, it is unclear if the following content, which includes content from an online account attributed to the Harris presidential campaign that has been accused of "repeatedly deceiv[ing]" viewers "with misleading edits and captions," would violate the law:

    a.    Republican Nat'l Comm., *12 Minutes of Democrats Denying Election Results,* (June 23, 2022), https://www.youtube.com/watch?v=XX2Ejqjz6TA&ab_channel=GOP. This video features accurate clips compiled together of numerous Democrat officials denying that the winners of elections (such as President Trump in 2016) in fact won.

    b.    Daniel Dale, *Fact Check: Harris campaign social media has repeatedly deceived with misleading edits and captions*, CNN (Sept. 14, 2024, 2:57 PM), https://perma.cc/KUZ2-AMEY.

170.   The example in paragraph 169.b is in Exhibit E.

171.   It is likewise unclear if the below digitally altered image generated by Grok AI, which depicts President Trump endorsing Governor Green, would violate

S2687 by harming a candidate's "reputation or electoral prospects." But for S2687, O'Brien would post this picture to her social media accounts during the period from February 2026 to election day that year. This image is included in Exhibit B.



172.    S2687 threatens The Bee and O'Brien with criminal convictions, damages, injunctions, attorney's fees, and other forms of punishment for creating, posting, or reposting content they desire to create, post, or repost.

173.    The Bee and O'Brien are direct objects of S2687 because they regularly distribute political content that is or is arguably regulated by S2687.

174.    The Bee has and will continue to post satirical articles on its website and social media and video-sharing platform accounts containing content that is or

is arguably regulated by S2687, including intentionally digitally created content portraying candidates in Hawaii that either indicates support or opposition to the candidate as stated in paragraphs 57 and 60 above.

175.    Because of the expansive criminal and civil statutes of limitations, The Bee faces a substantial risk that many of its existing articles and other online posts described in paragraph 57 from the 2024 election continue to be actionable under S2687 because The Bee posted them within the period when S2687 was effective.

176.    O'Brien desires to make posts on her online accounts with content that has been digitally created that would be actionable under S2687.

177.    For example, during the period in 2026 when S2687 will be operative, O'Brien desires to post the content described above in paragraph 114.

178.    O'Brien will refrain from posting the content identified in paragraph 114 above on her online accounts to avoid being subject to liability under S2687.

179.    Starting in February 2026, O'Brien would post the content identified in paragraph 114 above or materially similar content but for S2687.

180.    The only way for The Bee and O'Brien to publish content covered or arguably covered by S2687 is to label the content as "manipulated by technical means" and as "depict[ing] appearance, speech, or conduct that did not occur" in a size, language, and duration that complies with S2687.

181.    The disclaimer must also "include a citation directing the viewer or listener to the original sources" if the "media was generated by editing or creating new media from an existing video, image, or audio."

182.   This disclaimer alters the content of the messages The Bee and O'Brien desire to express by forcing them to incorporate Hawaii's desired messages into their content.

183.   This disclaimer alters the content of the satire and parody The Bee and O'Brien want to express by alerting the viewer to the satirical or parodical nature of the communication and thereby depriving the expression of its rhetorical force.

184.   Neither The Bee nor O'Brien are willing to post content with this label because they do not want this disclaimer to alter their messages and because S2687's size requirements ruin the communicative impact of their content.

185.   For example, S2687 requires The Bee to alter its headlines or video identified above by stamping the following disclaimer on its content:




186.   S2687 requires O'Brien to alter the content identified above by posting the following disclaimer on it. These images are included in Exhibit B.

 

187.   The Bee has continued to post satirical and parodical content without the disclaimer despite the substantial risk of harm imposed by S2687 because The Bee is unwilling to include the disclaimer and unwilling to chill its own speech.

188.   By contrast, O'Brien will refrain from posting the content identified in paragraph 114 because she is unwilling to include the disclaimer and unwilling to risk liability under S2687.

189.   S2687 harms The Bee by threatening it, its website, and its online platform accounts for posting content Hawaii defines as "materially deceptive."

190.   S2687 harms O'Brien by threatening her and her online platform accounts for posting content Hawaii defines as "materially deceptive."

191.   X, Facebook, Instagram, YouTube, and Rumble have terms of service that require compliance with applicable law, including S2687.

192.   If users of those platforms do not comply with applicable law, they risk being deplatformed.

193.    If The Bee continues to post or if O'Brien begins posting content that violates S2687, they risk disciplinary action or other sanctions from X, Facebook, Instagram, YouTube, or Rumble, which may include temporary bans or removal of their accounts.

194.   The Bee and O'Brien's substantial risk of being deplatformed or otherwise punished by these online platforms for posting their desired content causes them material harm because of content that they have posted in the past as identified in paragraphs 57, 60, and 114 above or content that they wish to post in the future as identified in these paragraphs.

195.   The Bee's revenue, access to followers and subscribers, and access to a platform of its choice are materially harmed by S2687.

196.   The Bee faces a substantial risk that the enforcement of S2687 will cause it to be removed from online platforms or cause these platforms to remove its content if that content is materially similar to content it has posted in the past as described in paragraphs 57 and 60 above.

197.   Such removal would impair The Bee's revenue and reputation, cause it to lose access to one or more large platforms to proclaim its messages, and cause it to lose access to the millions of followers and subscribers it has attracted across X, Facebook, Instagram, YouTube, and Rumble.

198.   Likewise, O'Brien also faces a substantial risk of deplatforming, which would significantly burden her.

37

199.   If O'Brien posted the content she desires to post in violation of S2687 as identified in paragraph 114 above, she risks disciplinary action or other sanctions from the platforms, which may include temporary bans or removal of her account.

200.   These sanctions would harm her reputation among her followers, cause her to lose access to platforms to communicate her preferred messages, views, and opinions, and cause her to lose access to the followers that she has acquired on Facebook and Instagram.

201.   S2687 also harms The Bee and O'Brien because they wish to view other content creators' content that would be available absent S2687.

202.   They are prejudiced, as viewers of this content, to the extent that S2687 curtails others' protected speech.

203.   The Bee and O'Brien's freedom to engage in their desired expression is burdened by S2687.

## ALLEGATIONS OF LAW

204.   The Bee and O'Brien distribute and intend to continue to distribute content that is subject to S2687.

205.   S2687 violates Plaintiffs' constitutional rights and chills and deters them from exercising their constitutional rights.

206.   As a direct and proximate result of Defendants' violations of Plaintiffs' constitutional rights, Plaintiffs have suffered and will suffer ongoing irreparable harm, entitling Plaintiffs to declaratory and injunctive relief.

207.   Plaintiffs do not have an adequate monetary or legal remedy for the loss of their constitutional rights.

208. Unless Defendants are enjoined, Plaintiffs will continue to suffer irreparable harm.

209. In enforcing S2687, Defendants, their agents, and persons under their control act under the color and pretense of the law, statutes, ordinances, regulations, customs, usages, or policies of the State of Hawaii.

## FIRST CAUSE OF ACTION
## VIOLATION OF THE FIRST AMENDMENT'S FREE SPEECH AND FREE PRESS CLAUSES BY S2687

210. Plaintiffs repeat and reallege each allegation contained in paragraphs 1–209 above.

211. The First Amendment's Free Speech and Free Press Clauses protect Plaintiffs' ability to create, publish, and distribute their speech. The Fourteenth Amendment incorporates the First Amendment against the States.

212. The First Amendment also protects Plaintiffs' right to be free from content, viewpoint, and speaker-based discrimination, overbroad restrictions on speech, and vague laws allowing unbridled discretion by enforcement officials.

213. The Bee and O'Brien engage in activities protected by the First Amendment when they create, publish, or distribute their own speech or republish the speech of others or view others' speech.

214. S2687 uses governmental authority and the threat of punishment to coerce private parties into punishing or suppressing The Bee and O'Brien's speech that Defendants disfavor.

215.   S2687 constitutes an impermissible and unreasonable restriction of protected speech because it burdens substantially more speech than is necessary to further any compelling governmental interest.

216.   As applied and facially, S2687 bars and chills speech based on content and viewpoint.

217.   As applied and facially, S2687 is not content-neutral because it targets only "materially deceptive media," and only a certain subset of that kind of speech. Specifically, it targets speech that has "the risk of harming the reputation or electoral prospects of a candidate in an election or changing the voting behavior of voters in an election."

218.   S2687 is not viewpoint-neutral because it singles out content that has a "risk of harming" but not content that has a risk of helping.

219.   As applied and facially, S2687 is not speaker-neutral because it exempts broadcasters, cable operators, direct-to-home satellite providers, interactive computer services, cloud service providers, and streaming services.

220.   S2687 is facially unconstitutional because in every application, it raises the same First Amendment problems, as detailed above.

221.   S2687 is unconstitutional as applied to The Bee and O'Brien's speech because S2687 is a content-, viewpoint-, and speaker-based regulation that bans, chills, and burdens their desired speech.

222.   As applied to The Bee and O'Brien, S2687 compels speech they object to, interferes with their editorial judgment, and compels them to publish and disseminate speech they object to.

223.    As applied to The Bee and O'Brien, S2687 is vague and allows Defendants unbridled discretion to evaluate The Bee and O'Brien's speech and then discriminate against it based on content and viewpoint in determining whether to apply S2687. S2687's unconstitutionally vague phrases include "reckless disregard of the risk of harming the reputation or electoral prospects of a candidate … or changing the voting behavior of voters," "cause a reasonable viewer or listener to believe that the depicted individual engaged in the speech or conduct depicted," and "[d]igital technology."

224.    S2687 is substantially overbroad in relation to any legitimate sweep and is facially unconstitutional for that reason.

225.    S2687 is substantially overbroad because it applies to content sent in text messages and private online conversations between even just two people.

226.    S2687 is also substantially overbroad because it does not adequately define various material terms in the statute, including but not limited to "materially deceptive media," "harming the reputation or electoral prospects of a candidate," and "changing the voting behavior of voters."

227.    S2687 vests unfettered discretion in state officials to define these terms and remove content in accordance with their own subjective ends for election regulations.

228.    Plaintiff O'Brien has not and will not engage in certain protected speech because of S2687.

229.    If not for S2687, Plaintiff O'Brien would engage in this protected speech.

41

230.  S2687 imposes a substantial risk of harm on Plaintiff The Babylon Bee because it has posted and will continue to post content that violates or at least arguably violates S2687.

231.  Defendants do not serve any compelling or even valid interest in a narrowly tailored way by infringing on The Bee and O'Brien's free speech and free press rights.

232.  Accordingly, facially and as applied to The Bee and O'Brien, S2687 violates the First Amendment's protections for free speech and free press

## SECOND CAUSE OF ACTION
## VIOLATION OF THE FOURTEENTH AMENDMENT BY S2687

233.  Plaintiffs repeat and reallege each allegation contained in paragraphs 1–209 above.

234.  The Fourteenth Amendment's Due Process Clause prohibits the government from censoring speech using vague standards that grant unbridled discretion to government officials to arbitrarily prohibit some speech and that fail to give speakers sufficient notice regarding whether their desired speech violates the law.

235.  Due process requires that people of ordinary intelligence be able to understand what conduct a given statute or regulation prohibits.

236.  Statutes or regulations that fail to provide this fair notice and clear guidance are void for vagueness.

237.  Statutes, rules, or regulations that authorize or even encourage arbitrary or viewpoint-discriminatory enforcement are void for vagueness.

238.   The Bee and O'Brien, Defendants, and third parties of ordinary intelligence cannot know what content is prohibited by S2687.

239.   S2687 chills and restrains satirists, political humorists, and other original content-creators, subjecting them to censorship and other punitive sanctions for their speech.

240.   S2687 chills and restrains the speech of those wishing to republish certain content prohibited by S2687 by subjecting that content to criminal sanctions and censorship.

241.   S2687 does not provide fair notice of what it prohibits.

242.   S2687 authorizes and encourages discriminatory enforcement.

243.   S2687 uses unconstitutionally vague phrases, including "reckless disregard of the risk of harming the reputation or electoral prospects of a candidate … or changing the voting behavior of voters," "cause a reasonable viewer or listener to believe that the depicted individual engaged in the speech or conduct depicted," and "[d]igital technology."

244.   Defendants can use this vagueness, and the unbridled discretion it provides, to apply S2687 in a way that discriminates against content, viewpoints, and actions Defendants disfavor.

245.   Accordingly, facially and as applied to The Bee and O'Brien, S2687 violates the Fourteenth Amendment's Due Process Clause and chills protected speech.

### PRAYER FOR RELIEF

Plaintiffs respectfully ask this Court to enter judgment against Defendants

and provide the following relief:

A.    A preliminary and permanent injunction to stop Defendants and any person acting in concert with them from:

1.    Enforcing S2687 as applied to Plaintiffs' constitutionally protected speech and press;

2.    Enforcing S2687 as applied to other similarly situated speakers engaging in similarly situated speech as Plaintiffs; and

3.    Enforcing S2687 facially.

B.    A declaration that S2687, as applied to Plaintiffs and similarly situated speakers, has violated and continues to violate their First Amendment and Fourteenth Amendment rights under the United States Constitution;

C.    A declaration that S2687 facially violates the First Amendment protections for speech and press and the Fourteenth Amendment protections for due process;

D.    An award of Plaintiffs' costs and expenses in this action, including reasonable attorney's fees under 42 U.S.C. § 1988;

E.    The requested injunctive relief without a condition of bond or other security required of Plaintiffs; and

F.    Any other relief that the Court deems equitable and just in the circumstances.

Respectfully submitted this 4th day of June, 2025.

_/s/ Shawn A. Luiz_
Shawn A. Luiz

Philip A. Sechler*
DC Bar No. 426358
Mathew W. Hoffmann*
VA Bar No. 100102
ALLIANCE DEFENDING FREEDOM
44180 Riverside Pkwy
Lansdowne, Virginia 20176
T: (571) 707-4655
F: (571) 707-4656
psechler@ADFlegal.org
mhoffmann@ADFlegal.org

_Attorneys for Plaintiffs_

**The Babylon Bee, LLC
and Dawn O'Brien**

*_Motion for pro hac vice admission filed concurrently_

## DECLARATION UNDER PENALTY OF PERJURY

I, Seth Dillon, have reviewed the complaint and declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my personal knowledge as to the policies, practices, posts, statistics, articles, intentions, and other factual statements that relate to The Babylon Bee.


Executed this __3__ day of June, 2025, at Jupiter, Florida.

_____

Seth Dillon

**DECLARATION UNDER PENALTY OF PERJURY**

I, Dawn O'Brien, have reviewed the complaint and declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my personal knowledge as to the policies, practices, posts, statistics, articles, intentions, and other factual statements that relate to Dawn O'Brien.

Executed this __3__ day of June, 2025, at Honolulu, Hawaii.

_____
Dawn O'Brien