Shawn A. Luiz (6855)
ATTORNEY AT LAW
733 Bishop Street, Suite 1280
Honolulu, HI 96813
T: (808) 538-0500
F: (808) 564-0010
attorneyluiz@gmail.com

Philip A. Sechler*
DC Bar No. 426358
Mathew W. Hoffmann*
VA Bar No. 100102
ALLIANCE DEFENDING FREEDOM
44180 Riverside Pkwy
Lansdowne, Virginia 20176
T: (571) 707-4655
psechler@ADFlegal.org
mhoffmann@ADFlegal.org
*Admitted pro hac vice

Attorneys for Plaintiffs
**The Babylon Bee, LLC**
and **Dawn O'Brien**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| **The Babylon Bee, LLC**, et al., | |
| *Plaintiffs*, | **Case No.** 1:25-cv-00234-SASP-KJM |
| v. | **MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |
| **Anne E. Lopez**, et al., | |
| *Defendants*. | **Hearing Date:** December 4, 2025<br>**Time:** 10:00 a.m.<br>**Judge:** Honorable Shanlyn A.S. Park |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................. ii

INTRODUCTION ...............................................................................1

STATEMENT OF FACTS ....................................................................2

I.    The Bee and O'Brien—like countless other Americans—post about politics................................................................................................2

II.   S2687 criminalizes political speech ............................................2

III.  S2687 regulates The Bee and O'Brien's speech .........................4

LEGAL STANDARD ...........................................................................6

ARGUMENT ......................................................................................6

I.    S2687 unconstitutionally regulates protected speech...................6

      A.    S2687 restricts core political speech ....................................8

      B.    S2687 regulates speech based on content, viewpoint, and speaker ....11

      C.    S2687 compels speech .......................................................13

      D.    S2687 fails strict scrutiny ..................................................15

            1.    Hawaii has less restrictive alternatives .....................15

            2.    S2687 fails to further a compelling interest and is over- and underinclusive ..................................................17

II.   S2687 is overbroad and vague....................................................20

      A.    S2687 regulates a substantial amount of speech .................21

      B.    S2687's vagueness covers even more protected speech ....................22

III.  This Court should grant Plaintiffs' requested relief ....................24

CONCLUSION...................................................................................25

CERTIFICATE OF SERVICE ...............................................................27

# TABLE OF AUTHORITIES

## **Cases**

*281 Care Committee v. Arneson,*
    766 F.3d 774 (8th Cir. 2014) ...................................................... 11, 16, 19, 22

*303 Creative LLC v. Elenis,*
    600 U.S. 570 (2023) ....................................................................................13

*44 Liquormart, Inc. v. Rhode Island,*
    517 U.S. 484 (1996) ....................................................................................16

*American Trucking Associations, Inc. v. City of Los Angeles,*
    559 F.3d 1046 (9th Cir. 2009) ....................................................................25

*Animal Legal Defense Fund v. Wasden,*
    878 F.3d 1184 (9th Cir. 2018) ......................................................................9

*Arizona Free Enterprise Club's Freedom Club PAC v. Bennett,*
    564 U.S. 721 (2011) ....................................................................................11

*Baird v. Bonta,*
    81 F.4th 1036 (9th Cir. 2023) .....................................................................25

*Berger v. City of Seattle,*
    1029 (9th Cir. 2009) ...................................................................................24

*Boyer v. City of Simi Valley,*
    978 F.3d 618 (9th Cir. 2020) ...................................................................7, 11

*Brown v. Hartlage,*
    456 U.S. 45 (1982) ......................................................................................14

*Butcher v. Knudsen,*
    38 F.4th 1163 (9th Cir. 2022) .....................................................................23

*Chaker v. Crogan,*
    428 F.3d 1215 (9th Cir. 2005) ........................................................ 11, 18, 19

*Citizens United v. FEC,*
    558 U.S. 310 (2010) ........................................................... 8, 13, 15, 17

*Commonwealth v. Lucas*,
    34 N.E.3d 1242 (Mass. 2015) .......................................................... 11, 22, 24

*Daily Herald Co. v. Munro*,
    838 F.2d 380 (9th Cir. 1988) ..........................................................16

*Edge v. City of Everett*,
    929 F.3d 657 (9th Cir. 2019) ................................................... 20, 23

*Epic Games, Inc. v. Apple, Inc.*,
    67 F.4th 946 (9th Cir. 2023) ..........................................................25

*Falwell v. Flynt*,
    805 F.2d 484 (4th Cir. 1986) ..........................................................9

*Farah v. Esquire Magazine*,
    736 F.3d 528 (D.C. Cir. 2013) .........................................................14

*FCC v. Fox Television Stations, Inc.*,
    567 U.S. 239 (2012) ............................................................... 20, 23

*Free Speech Coalition, Inc. v. Paxton*,
    145 S. Ct. 2291 (2025) ..............................................................6, 7

*Gentile v. State Bar of Nevada*,
    501 U.S. 1030 (1991) .................................................................23

*Gertz v. Robert Welch, Inc.*,
    418 U.S. 323 (1974) ..................................................................10

*Grayned v. City of Rockford*,
    408 U.S. 104 (1972) ............................................................... 20, 22

*Grimmett v. Freeman*,
    59 F.4th 689 (4th Cir. 2023) ................................................... 7, 8, 18

*Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston*,
    515 U.S. 557 (1995) ..................................................................13

*Hustler Magazine v. Falwell*,
    485 U.S. 46 (1988) ...................................................................9, 21

*Iancu v. Brunetti*,
　　588 U.S. 388 (2019)........................................................................ 11, 12, 15

*IMDb.com Inc. v. Becerra*,
　　962 F.3d 1111 (9th Cir. 2020) ............................................... 15, 17

*Junior Sports Magazines Inc. v. Bonta*,
　　80 F.4th 1109 (9th Cir. 2023) ...........................................................11

*Kaahumanu v. Hawaii*,
　　682 F.3d 789 (9th Cir. 2012) ...........................................................24

*Klein v. City of San Clemente*,
　　584 F.3d 1196 (9th Cir. 2009) .........................................................25

*Knievel v. ESPN*,
　　393 F.3d 1068 (9th Cir. 2005) .............................................. 10, 21

*Koala v. Khosla*,
　　931 F.3d 887 (9th Cir. 2019) ...............................................................8

*Kohls v. Bonta*,
　　752 F. Supp. 3d 1187 (E.D. Cal. 2024) ...... 7, 9, 10, 11, 14, 15, 16, 17, 21, 25

*McCullen v. Coakley*,
　　573 U.S. 464 (2014)................................................................ 15, 17

*McIntyre v. Ohio Elections Commission*,
　　514 U.S. 334 (1995)...............................................................................8

*Minneapolis Star & Tribune Co. v. Minnesota Commissioner of Revenue*,
　　460 U.S. 575 (1983)...............................................................................8

*Minnesota Voters Alliance v. Mansky*,
　　585 U.S. 1 (2018)................................................................................24

*Monitor Patriot Co. v. Roy*,
　　401 U.S. 265 (1971)...............................................................................9

*Moody v. NetChoice*,
　　603 U.S. 707 (2024)................................................................. 20, 21

*Morse v. Frederick*,
  551 U.S. 393 (2007)......................................................................................8

*National Institute of Family & Life Advocates v. Becerra*,
  585 U.S. 755 (2018)................................................... 12, 13, 14, 16

*National Rifle Association of America v. Vullo*,
  602 U.S. 175 (2024)....................................................................................11

*Old Dominion Branch No. 496, National Association of Letter Carriers,*
  *AFL-CIO v. Austin*,
  418 U.S. 264 (1974)......................................................................................9

*Packingham v. North Carolina*,
  582 U.S. 98 (2017)......................................................................................19

*R.A.V v. City of St. Paul*,
  505 U.S. 377 (1992)................................................................... 15, 17, 18

*Reed v. Town of Gilbert*,
  576 U.S. 155 (2015)................................................................ 11, 13, 15

*Rickert v. State*,
  168 P.3d 826 (Wash. 2007) ........................................................................7

*Riley v. National Federation of the Blind of North Carolina, Inc.*,
  487 U.S. 781 (1988)................................................................. 13, 14

*Rosenberger v. Rector & Visitors of University of Virginia*,
  515 U.S. 819 (1995)....................................................................................12

*San Francisco Bay Guardian, Inc. v. Superior Court*,
  21 Cal. Rptr. 2d 464 (Ct. App. 1993) ......................................................14

*Southern California Darts Association v. Zaffina*,
  762 F.3d 921 (9th Cir. 2014) ......................................................................6

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014)....................................................................................17

*Susan B. Anthony List v. Driehaus*,
  814 F.3d 466 (6th Cir. 2016) ......................................................................7

*Tucson v. City of Seattle*,
 91 F.4th 1318 (9th Cir. 2024) ..........................................................................20

*United States v. Alvarez*,
 567 U.S. 709 (2012)................................................................... 9, 16, 17, 22

*United States v. Hansen*,
 599 U.S. 762 (2023)..........................................................................20

*United States v. Playboy Entertainment Group, Inc.*,
 529 U.S. 803 (2000)..........................................................................7

*United States v. Stevens*,
 559 U.S. 460 (2010)..........................................................................9

*Victory Processing, LLC v. Fox*,
 937 F.3d 1218 (9th Cir. 2019) ....................................................................8, 19

*Washington Post v. McManus*,
 944 F.3d 506 (4th Cir. 2019) ..........................................................................18

*West Virginia State Board of Education v. Barnette*,
 319 U.S. 624 (1943)..........................................................................1

*Wilton v. Seven Falls Co.*,
 515 U.S. 277 (1995)..........................................................................25

*X Corp. v. Bonta*,
 116 F.4th 888 (9th Cir. 2024) ..........................................................................13

**Statutes**

Cal. Elec. Code § 20012 ..........................................................................10

Haw. Rev. Stat. § 11-302 ................................................................. 3, 8, 12, 19, 21

Haw. Rev. Stat. § 11-303 ................................................. 3, 4, 9, 12, 17, 19, 21, 23

Haw. Rev. Stat. § 11-304 ............................................................... 3, 4, 22

Haw. Rev. Stat. § 11-412 ..........................................................................3

Haw. Rev. Stat. § 19-3 ..........................................................................16

Haw. Rev. Stat. § 701-107 ...............................................................................3

Haw. Rev. Stat. § 706-640 ...............................................................................3

Va. Code Ann. § 24.2-1005.1 ........................................................................16

## **Rules**

Fed. R. Civ. P. 56(a) .........................................................................................6

## **Other Authorities**

Eugene Volokh, *When are Lies Constitutionally Protected?*,
    4 J. Free Speech L. 685 (2024) ......................................................................16

Gettysburg Address (Nov. 19, 1863) ..............................................................1

Gilbert Highet, *The Anatomy of Satire* (1962) .............................................14

*Kohls v. Bonta*,
    No. 2:24-cv-02527 (E.D. Cal. Mar. 7, 2025), Doc. 49-1 .............................12

## INTRODUCTION

We have a "government of the people, by the people, for the people."
Gettysburg Address (Nov. 19, 1863). That's why the First Amendment gives the
utmost protection to political speech. Without free speech and press, we can't
govern ourselves. No government "can prescribe what shall be orthodox in
politics." *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943).

Yet that's what Hawaii's new law, S2687, aims to do. It criminalizes speech
about political candidates and ballot issues (and also threatens lawsuits, damages,
injunctions, attorney's fees, and a bar on holding public office). It bans political
speech conveying only certain views—those that merely pose some *risk* of
harming reputation or election chances. And it bans these views broadly, covering
video, image, or audio distributed or redistributed by anyone.

This censorship passes muster—under Hawaii's view—because it targets
digitally altered content that depicts things that didn't happen. But that gets Hawaii
nowhere. Since our country's founding, exaggeration, satire, and parody have
served indispensable roles in public discourse. They make truthful points that are
otherwise difficult to make. And Hawaii's solution is much worse than its
unproven fears. Letting government officials determine and then criminalize
political speech they think is false is a recipe to destroy democracy, not save it.

Plaintiffs The Babylon Bee, LLC and Dawn O'Brien take pride in exercising
their First Amendment right to comment on politics. The Bee runs a well-known
satire and parody website spoofing candidates for office, among others. And
O'Brien frequently posts on Hawaii politics and wants to continue to do so, free

1

from Hawaii's censorship. They brought this lawsuit to vindicate their First and

Fourteenth Amendment rights. This Court should grant their motion for summary

judgment, permanently enjoin S2687, and declare it unconstitutional.

## STATEMENT OF FACTS

### I.    The Bee and O'Brien—like countless other Americans—post about politics.

The Bee and O'Brien speak and post content about political candidates and

elections. Plaintiffs' Concise Statement of Undisputed Facts ("PCSUF") ¶¶ 5, 19.

The Bee operates a website, babylonbee.com, with the tagline "Fake news you can

trust." *Id.* ¶¶ 1–2. It writes satirical articles about faith, politics, and culture on its

website, and publishes its articles online. *Id.* ¶ 5. O'Brien is a Hawaii resident who

has Facebook and Instagram accounts on which she regularly posts about politics,

elections, and her Christian faith. *Id.* ¶ 19.

### II.   S2687 criminalizes political speech.

During legislative debates over S2687, the Hawaii Office of the Public

Defender and numerous Hawaii residents objected that it would run roughshod

over free-speech and due-process rights. *Id.* ¶¶ 28–30. And the Motion Picture

Association asked the legislature to add an exemption for protected "parody and

satire." *Id.* ¶ 31. But the legislature almost unanimously rejected these concerns.

With only one legislator out of 76 dissenting, it enacted S2687. *Id.* ¶ 32.

S2687 prohibits any "person" from "recklessly distribut[ing] … materially

deceptive media in reckless disregard of the risk of harming the reputation or

electoral prospects of a candidate in an election or changing the voting behavior of

voters in an election." Hawaii Revised Statutes (HRS) § 11-303(a). The statute defines "materially deceptive media" as "any information, including any video, image, or audio, that" meets the following four criteria: is an "advertisement"; "[d]epicts an individual engaging in speech or conduct in which the depicted individual did not in fact engage"; "[w]ould cause a reasonable viewer or listener to believe that the depicted individual engaged in the speech or conduct depicted"; and "[w]as created by" artificial intelligence (AI) or other "[d]igital technology." *Id.* An "advertisement" is "any communication" that "[i]dentifies a candidate" or a ballot issue and "[a]dvocates or supports the nomination, opposition, or election of the candidate" or the "passage or defeat" of the ballot issue. HRS § 11-302. A "candidate" is any "individual who seeks nomination for election or seeks election to office." *Id.*

S2687 threatens both criminal and civil penalties. Conviction—even for a first-time offense—can result in a 30-day jail sentence and fine up to $1,000. HRS §§ 701-107(4), 706-640(1)(e). A second-time offense can trigger up to a year in jail. HRS § 701-107(3). A conviction under S2687 disqualifies a person "from holding elective public office" for ten years. HRS § 11-412(d). The law also authorizes "depicted individual[s]" or "any organization that represents the interest of voters likely to be deceived by the distribution of materially deceptive media" to bring suit for "general or special damages," "injunctive or other equitable relief," and "attorney's fees and costs." HRS §§ 11-304(a), (b). Defendant Attorney General, Defendant Commission members, county attorneys or county prosecutors, including Defendant Prosecuting Attorney, and a "candidate for nomination or

3

election to a public office who is injured or is likely to be injured by dissemination of materially deceptive media" can file suit for "injunctive or other equitable relief." HRS § 11-304(b). Prevailing non-government plaintiffs can also receive "attorney's fees and costs." *Id.*

S2687 has three exemptions: disclaimers, broadcasters, and interactive computer services. First, the law does "not apply if the media includes a disclaimer informing the viewer that the media has been manipulated by technical means and depicts appearance, speech, or conduct that did not occur." HRS § 11-303(c). For video, the disclaimer must appear throughout the entire video, and for video and images, the disclaimer must be "clearly visible to and readable," use "letters at least as large as the largest size of any text communication," and be in the same language as the video or image. HRS § 11-303(c)(1). If the person generated the media from existing media, the disclaimer must also "include a citation directing the viewer or listener to the original sources." HRS § 11-303(c)(4).

But S2687 doesn't apply equally to every speaker. It exempts a "broadcaster, cable operator, or direct-to-home satellite provider unless it was involved in the creation of the materially deceptive media." HRS § 11-303(b)(1). It also doesn't apply to an "interactive computer service, cloud service provider, or streaming service for content provided by another person" unless the entity knows "that the content is deceptive and intends to deceive a resident of the State." HRS § 11-303(b)(2). S2687 will next be effective starting February 2, 2026. PCSUF ¶ 33.

## III.    S2687 regulates The Bee and O'Brien's speech.

The Bee has posted content covered by S2687 and intends to do so for future

elections. PCSUF ¶¶ 6–7. Before, during, and after the 2024 election, The Bee posted satirical articles about Presidential candidates Donald Trump and Kamala Harris, Vice Presidential candidates J.D. Vance and Tim Walz, and President Biden that contained digitally altered images. *Id.* ¶ 6. The Bee intends to post similar content, including about candidates in Hawaii, for future elections. *Id.* ¶ 7.

Some have mistaken The Bee's satirical articles for news articles. *Id.* ¶ 9. For example, Donald Trump once presumed that an article titled "Twitter Shuts Down Entire Network to Slow Spread Of Negative Biden News" was a real news article and retweeted it. *Id.* ¶ 10. And Snopes and USA Today have fact-checked dozens of satirical articles posted by The Bee. *Id.* ¶ 11.

O'Brien expects Governor Green to run for reelection in 2026 and wants to persuade Hawaii residents not to vote for him. *Id.* ¶¶ 21–22. She desires to post and send these AI-generated images of Gov. Green to convey a message about his policies that would otherwise be difficult to make. *Id.* ¶ 22.

  To O'Brien, these images convey that Gov. Green implemented draconian pandemic response policies and has taken actions hostile to free speech, including signing S2687. *Id.* ¶ 23. But for S2687, she would post these images during the campaign season. *Id.* ¶ 40.

Neither The Bee nor O'Brien desire or intend to include S2687's required disclaimer in their future posts. *Id.* ¶ 36. The disclaimer alters the content of what they wish to say and ruins the communicative impact of their speech, as shown in the below images. *Id.*¶¶ 36–37.





## LEGAL STANDARD

The Court "shall grant summary judgment" if Plaintiffs show "there is no genuine dispute as to any material fact and" they are "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 925 (9th Cir. 2014).

## ARGUMENT

### I.    **S2687 unconstitutionally regulates protected speech.**

S2687 restricts certain speech about politics and politicians, discriminating based on content, viewpoint, and speaker. It compels speech too. All of which calls for the strictest of scrutinies. *See Free Speech Coal., Inc. v. Paxton*, 145 S. Ct. 2291, 2310 (2025); *Boyer v. City of Simi Valley*, 978 F.3d 618, 621–23 (9th Cir.

2020) (explaining ordinance that "prefers speakers likely to spread [government-favored] messages" triggers strict scrutiny). These constitutional flaws make S2687 "presumptively invalid," and Hawaii "bears the burden of proving the constitutionality of its actions." *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 816–17 (2000) (citation modified). Strict scrutiny "succeeds in" its mission to ensure that the government cannot police people's speech "if and only if, as a practical matter, it is fatal in fact absent truly extraordinary circumstances." *Paxton*, 145 S. Ct. at 2310. Thus, "only once" has the Supreme Court held a law to survive strict scrutiny. *Id.*

　　Hawaii cannot meet this high bar. Courts have repeatedly held similar laws unconstitutional. For example, a district court recently preliminarily enjoined California from enforcing a similar law prohibiting distributing "materially deceptive content." *Kohls v. Bonta*, 752 F. Supp. 3d 1187 (E.D. Cal. 2024). In *Grimmett v. Freeman*, the Fourth Circuit held unconstitutional a North Carolina law that prohibited false "derogatory reports" about political candidates that were "calculated or intended to affect the chances of such candidate for nomination or election." 59 F.4th 689, 691 (4th Cir. 2023) (citation modified). In *Susan B. Anthony List v. Driehaus*, the Sixth Circuit invalidated a law prohibiting false speech "designed to promote the election, nomination, or defeat of the candidate." 814 F.3d 466, 470 (6th Cir. 2016). And in *Rickert v. State*, the Washington Supreme Court invalidated a law that prohibited false statements about candidates but exempted statements "made by a candidate (or his supporters) about himself." 168 P.3d 826, 831 (Wash. 2007). These laws only covered content-, viewpoint-, or

speaker-based subsets of false speech, rendering them unconstitutional. *Grimmett*, 59 F.4th at 694. So too with S2687. For the same reasons, S2687 violates the Free Press Clause. The First Amendment prohibits regulation "with the intent to burden the press," *Koala v. Khosla*, 931 F.3d 887, 897 (9th Cir. 2019), and "differential treatment, unless justified by some special characteristics of the press," *Minneapolis Star & Trib. Co. v. Minn. Com'r of Rev.*, 460 U.S. 575, 585 (1983).

### A.    S2687 restricts core political speech.

"Political speech … is at the core of what the First Amendment is designed to protect." *Morse v. Frederick*, 551 U.S. 393, 403 (2007) (citation modified). It "is a precondition to enlightened self-government and a necessary means to protect it." *Citizens United v. FEC*, 558 U.S. 310, 339 (2010). The First Amendment broadly protects speech about political candidates "to assure the unfettered interchange of ideas for the bringing about of political and social changes desired by the people." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 346 (1995) (citation modified).

S2687 facially restricts political speech. It regulates "any communication" that "[i]dentifies a candidate" or ballot issue and "[a]dvocates or supports the nomination, opposition or election of the candidate" or the passage or defeat of the issue. HRS § 11-302. It thus "strikes at the heart of the First Amendment." *See Victory Processing, LLC v. Fox*, 937 F.3d 1218, 1223 (9th Cir. 2019).

S2687 doubles down on the constitutional violation by criminalizing even political satire and parody campaign ads—speech that dates back to the founding of our country. "Nothing is more thoroughly democratic than to have the high-and-mighty lampooned and spoofed." *Falwell v. Flynt*, 805 F.2d 484, 487 (4th Cir.

1986) (Wilkinson, J., dissenting from denial of reh'g). Speech ridiculing politicians and elected officials is one venerable form of criticizing the government.

S2687 appears to operate under the premise that false speech isn't generally protected. That's incorrect. No "categorical" First Amendment exception for false speech exists. *See United States v. Alvarez*, 567 U.S. 709, 719 (2012) (plurality). Parody and satire are the most obvious examples of protected speech that isn't literally true. *Hustler Mag. v. Falwell,* 485 U.S. 46, 50 (1988). The same goes for hyperbole and even "innocent mistake[s] of fact." *Old Dominion Branch No. 496*, *Nat. Ass'n of Letter Carriers, AFL-CIO v. Austin*, 418 U.S. 264, 277 (1974).

Indeed, false speech can be regulated *only* if it falls within historical exceptions to the First Amendment for things like defamation or fraud. These "traditional categories [of expression] long familiar to the bar" are "well-defined and narrowly limited." *United States v. Stevens*, 559 U.S. 460, 468–69 (2010). And they "typically require proof of specific or tangible harm" or "a material benefit to the speaker." *Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184, 1194–95 (9th Cir. 2018). But S2687 identifies only *intangible* types of speculative harm: unquantifiable "risk of harming" a depicted candidate's reputation or electoral prospects or the "risk of … changing … voting behavior." HRS § 11-303(a).

S2687 goes far beyond any historical exceptions. For example, Hawaii's law "extends beyond the legal standard for defamation." *See Kohls*, 752 F. Supp 3d at 1193. It doesn't just protect a candidate's reputation—the "essence of libel." *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 275 (1971). Instead, it seeks to protect the "reputation *or* electoral prospects of a candidate." HRS § 11-303(a) (emphasis

9

added). The law covers content like satire that isn't even "reasonably capable of sustaining a defamatory meaning." *Knievel v. ESPN*, 393 F.3d 1068, 1073 (9th Cir. 2005) (citation modified). It doesn't require proof of an "actual injury" either but still gives a private right of action to unharmed people. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 349 (1974). It's enough if content poses the mere risk of "'harm' [to] the amorphous 'electoral prospects' of a candidate." *See Kohls*, 752 F. Supp. 3d at 1193.

Just last year, a district court preliminarily enjoined California's similar law. *See id.* That law "regulate[s] a broad spectrum of election-related content that is 'materially deceptive.'" *Id.* (quoting Cal. Elec. Code § 20012(b)(1)). It prohibits anyone "with malice" from "knowingly distribut[ing] an advertisement or other election communication containing materially deceptive content" of a candidate for office "portrayed as doing or saying something that the candidate did not do or say if the content is reasonably likely to harm the reputation or electoral prospects of a candidate." Cal. Elec. Code § 20012(b)(1). The court ruled that California's law "acts as a hammer instead of a scalpel, serving as a blunt tool that hinders humorous expression and unconstitutionally stifles the free and unfettered exchange of ideas which is so vital to American democratic debate." *Kohls*, 752 F. Supp. 3d at 1199. Where California used a hammer, Hawaii uses a sledgehammer. S2687 applies to content that merely risks "changing … voting behavior"—the very essence of political speech. It also extends beyond candidates to regulate speech about ballot issues. And it requires only a "reckless" mens rea, as opposed to California's knowledge requirement.

Like California, Hawaii thinks that "the election context gives the government broader authority to restrict speech." *Commonwealth v. Lucas*, 34 N.E.3d 1242, 1253–54 (Mass. 2015). But "[t]he opposite is true." *Id.*; *accord 281 Care Comm. v. Arneson*, 766 F.3d 774, 782–83 (8th Cir. 2014) (applying a higher standard of scrutiny to election misinformation regulation than to other falsehoods). "[T]he First Amendment has its fullest and most urgent application to speech uttered during a campaign for political office." *Ariz. Free Enter. Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 734 (2011) (citation modified).

### B.    S2687 regulates speech based on content, viewpoint, and speaker.

S2687 "specifically targets speech within political or electoral content pertaining to candidates … , making it a content-based regulation that seeks to limit public discourse." *Kohls*, 752 F. Supp. 3d at 1195. It also unconstitutionally "singles out certain speech within that category for special opprobrium based on" content, "the speaker's viewpoint," and the speaker's identity. *Chaker v. Crogan*, 428 F.3d 1215, 1227 (9th Cir. 2005). Viewpoint discrimination is "uniquely harmful to a free and democratic society." *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 187 (2024). Thus, if a law is "viewpoint-based, it is unconstitutional." *Iancu v. Brunetti*, 588 U.S. 388, 393 (2019); *see Junior Sports Mags. Inc. v. Bonta*, 80 F.4th 1109, 1124 (9th Cir. 2023) (VanDyke, J., concurring) (collecting cases suggesting viewpoint discrimination is "per se invalid"). But, at the very least, it triggers strict scrutiny. *Boyer*, 978 F.3d at 621.

First, S2687 "applies to particular speech because of the topic," meaning it discriminates based on content. *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015).

11

The law only prohibits speech that "[i]dentifies a candidate" or ballot issue. HRS § 11-302. In fact, California conceded that its similar law, which prohibits speech about "candidates," discriminates based on content. *See Kohls v. Bonta*, No. 2:24-cv-02527 (E.D. Cal. Mar. 7, 2025), Doc. 49-1 at 16.

Second, S2687 regulates based on viewpoint, an "egregious form of content discrimination." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829–830 (1995). Political content that is "positive about a person" and bolsters reputation—like memes of Gov. Green praying or playing professional football—is allowed, but "derogatory" political content that harms a candidate's prospects for election—like memes of Gov. Green in a red communist uniform—is not. *See Iancu*, 588 U.S. at 393 (citation modified). The law also prohibits content that "advocates the passage or defeat" of a ballot issue, but not content that encourages people not to vote or simply tries to sow confusion. *See* HRS § 11-302.

Third, S2687 draws distinctions based on the speaker, violating both the Free Speech and Free Press Clauses. Broadcasters and cable operators can share fake content without even a disclaimer. HRS § 11-303(b)(1). So too can an "interactive computer service, cloud service provider, or streaming service" that distributes but does not create prohibited content. HRS § 11-303(b)(2). But Plaintiffs can create or post similar content only if they include Hawaii's burdensome disclaimer. HRS § 11-303(c).

The Supreme "Court's precedents are deeply skeptical of laws that distinguish among different speakers." *Nat'l Inst. of Fam. & Life Advocs. v. Becerra* (*NIFLA*), 585 U.S. 755, 777–78 (2018) (citation modified). Such laws "are

12

all too often simply a means to control content." *Reed*, 576 U.S. at 170. "Quite apart from the purpose or effect of regulating content" it's also "wrong" to prefer certain speakers over others. *Citizens United*, 558 U.S. at 340. "By taking the right to speak from some and giving it to others," the government "deprive[s] the public of the right and privilege to determine for itself what speech and speakers are worthy of consideration." *Id.* at 340–41.

### C.    S2687 compels speech.

S2687 doesn't just restrict speech—it also compels it. The state compels speech when it requires someone to say something that affects the speaker's message. *303 Creative LLC v. Elenis*, 600 U.S. 570, 586 (2023). And a speaker's right to choose her own message applies "equally to statements of fact the speaker would rather avoid." *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 573 (1995).

Forced disclaimers—even purely factual ones—are a form of compelled speech. Requiring pregnancy clinics to post "government-scripted" notices about the services they provide compels speech. *NIFLA*, 585 U.S. at 777. So does forcing professional fundraisers to disclose what percentage of donations go to charitable causes. *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 797–98 (1988) ("[W]e would not immunize a law … requiring a speaker favoring an incumbent candidate to state during every solicitation that candidate's recent travel budget.").

S2687's forced disclaimer similarly compels speech and regulates based on content by altering what The Bee and O'Brien want to say. *See X Corp. v. Bonta*, 116 F.4th 888, 900 (9th Cir. 2024) ("When a state compels individuals to speak a

particular message, the state alters the content of their speech, and engages in content-based regulation." (citation modified)). Take The Bee's fake CNN headline about the attempted assassination of then-candidate Trump. PCSUF ¶ 37. As shown above, Hawaii's disclaimer ruins the "perception of incongruity" that gives the image its comedic effect. Gilbert Highet, *The Anatomy of Satire* 67 (1962). It's "the pretense of reality" juxtaposed with the patently absurd that allows parody to "convey an underlying critical message" in a humorous way. *Farah v. Esquire Mag.*, 736 F.3d 528, 537 (D.C. Cir. 2013) (citation modified); *see S.F. Bay Guardian, Inc. v. Super. Ct.*, 21 Cal. Rptr. 2d 464, 466 (Ct. App. 1993) ("[T]he very nature of parody … is to catch the reader off guard at first glance, after which the 'victim' recognizes that the joke is on him to the extent that it caught him unaware.").

Worse, the size and duration requirements of the disclaimer "effectively rule[] out the possibility of [Plaintiffs' content] in the first place." *NIFLA*, 585 U.S. at 778 (citation modified). S2687's disclaimer would invade a large portion of Plaintiffs' media. *E.g.*, PCSUF ¶ 37. As a court held about California's similar requirement, the disclaimer "almost certainly drowns out" the message. *Kohls*, 752 F. Supp. 3d at 1197 (citation modified).

"[T]he predictable result" of forced disclaimers like these is that speakers will "refrain" from saying anything at all. *Riley*, 487 U.S. at 800. But "[t]he preferred First Amendment remedy" for disfavored speech is "more speech, not enforced silence." *Brown v. Hartlage*, 456 U.S. 45, 61 (1982) (citation modified).

14

**D.      S2687 fails strict scrutiny.**

S2687's viewpoint discrimination is all this Court needs to facially enjoin enforcement of the law. *See Iancu*, 588 U.S. at 398–99 (rejecting government's argument that a viewpoint discriminatory law can be saved by "permissible applications"). But at the very least, S2687's selective application to certain content, viewpoints, and speakers makes it "presumptively invalid." *R.A.V v. City of St. Paul*, 505 U.S. 377, 394 (1992). And that presumption is heightened here because Hawaii wants to police political discourse. *Citizens United*, 558 U.S. at 340 (suggesting "political speech simply cannot be banned or restricted as a categorical matter"). At minimum, S2687 must advance a compelling state interest through the least restrictive means possible. *Reed*, 576 U.S. at 173. Hawaii can't meet its burden.

### 1.      Hawaii has less restrictive alternatives.

"Because restricting speech should be the government's tool of last resort, the availability of obvious less-restrictive alternatives renders a speech restriction overinclusive" and unconstitutional. *IMDb.com Inc. v. Becerra*, 962 F.3d 1111, 1125 (9th Cir. 2020) (citation modified). "The First Amendment does not permit speech-restrictive measures when the state may remedy the problem by implementing or enforcing laws that do not infringe on speech." *Kohls*, 752 F. Supp. 3d at 1195 (citation modified). But Hawaii has many alternative ways to protect the integrity of elections, and Hawaii has not shown that it found these alternatives ineffective. *See McCullen v. Coakley*, 573 U.S. 464, 494 (2014).

First, "the ordinary course in a free society" is to remedy false speech with

"speech that is true." *Alvarez*, 567 U.S. at 727 (plurality). "Especially as to political speech, counter speech is the tried and true buffer and elixir." *Kohls*, 752 F. Supp. 3d at 1191; *281 Care Comm.*, 766 F.3d at 793. Hawaii could counter deceptive speech with factual speech of its own. It could start a "Government-created database" that tracks "materially deceptive content" and "verif[ies] and expos[es] false claims." *Alvarez*, 567 U.S. at 729 (plurality). It could launch "educational campaigns" on how to spot deceptive content. *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 507 (1996) (citing "educational campaigns" as alternative to First Amendment restriction); *NIFLA*, 585 U.S. at 775 (same). It could start its own committee dedicated to flagging deceptive content. Plenty of media outlets already do. *See* PCSUF ¶ 11. In fact, The Bee has received much fact-checking in the past. *Id.* ¶ 13. If media outlets have time to fact-check The Bee's articles, Hawaii can publicly debunk false claims that pose a real threat.

Second, Hawaii already regulates the knowing communication of provably false factual statements, like "false information about the time, date, place, or means of voting." HRS § 19-3(12); *see also* Va. Code Ann. § 24.2-1005.1 (same); Eugene Volokh*, When are Lies Constitutionally Protected?,* 4 J. Free Speech L. 685, 704–09 (2024) (contrasting lies about "'election procedures'"—an area where a "narrower restriction[ ] might pose fewer problems" with lies about election campaigns and government officials—areas that should be "categorically immune from liability"). This provision isn't necessarily constitutional, but this alternative "simply … demonstrate[s] the deficiency of the statute as currently written." *Daily Herald Co. v. Munro*, 838 F.2d 380, 385 (9th Cir. 1988). At the least, regulating

16

this type of false speech would eliminate subjective enforcement terms like "risk of harming the reputation or electoral prospects of a candidate," that can be exploited by malicious activists or partisan government officials. *See* HRS § 11-303(a).

Third, Hawaii could limit potential plaintiffs to candidates actually harmed by unprotected false speech. This would mirror defamation law, which permits claims only by the person harmed—not anyone who hears the defamation. *See* Restatement (Second) of Torts § 564A (1977). This would also decrease the risk of selective enforcement and frivolous lawsuits that will chill protected speech. *E.g.*, *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 164 (2014); *Alvarez*, 567 U.S. at 723 (plurality). Hawaii further has "[o]ther statutory causes of action" that already exist, like "privacy torts, copyright infringement, or defamation." *Kohls*, 752 F. Supp. 3d at 1195.

Hawaii must show that alternative methods "would fail to achieve the government's interests, not simply that the chosen route is easier." *McCullen*, 573 U.S. at 495. But it hasn't shown that it tested these other options, and they failed. And because the First Amendment is "[p]remised on mistrust of governmental power," Hawaii gets no deference here. *Citizens United*, 558 U.S. at 340.

### 2. S2687 fails to further a compelling interest and is over- and underinclusive.

Hawaii must also "show that the statute furthers a compelling governmental interest." *IMDb.com*, 962 F.3d at 1125 (citation modified). "[S]elective limitations upon speech" don't further a compelling interest. *R.A.V.*, 505 U.S. at 392. And S2687 is both underinclusive and overinclusive, providing even more reasons to

hold the statute invalid.

Hawaii's law applies only to selective topics, viewpoints, and speakers. S2687 does not prohibit *all* false content, only false content that includes "statements about a certain subject"—candidates and ballot issues. *Grimmett*, 59 F.4th at 694. And S2687 applies only to statements "of a particular nature"— content with a risk of harming a candidate's election chances. *Id.* So "speakers may lie with impunity about businesspeople, celebrities, purely private citizens, or even government officials" who are not candidates. *Id.*

The prohibition on false content likely to harm a candidate's reputation is similarly selective because it prohibits statements only against political candidates. While "the government may proscribe libel," "it may not make the further content discrimination of proscribing *only* libel critical of" political figures. *R.A.V.*, 505 U.S. at 384; *Grimmett*, 59 F.4th at 694 (same); *see also Chaker*, 428 F.3d at 1226–27 (invalidating law prohibiting false statements "limited to criticism of government officials"). These content and viewpoint-based limitations don't further a state's interest in preserving free and fair elections "because [a law] not limited to speech about current political candidates would have precisely the same beneficial effect." *Grimmett*, 59 F.4th at 696 (citation modified).

"While generic content-based regulations strain our commitment to free speech, content-based regulations that target *political* speech are especially suspect." *Wash. Post v. McManus*, 944 F.3d 506, 513 (4th Cir. 2019). That Hawaii has less-restrictive "content-neutral alternatives … undercuts significantly any defense of such a statute." *R.A.V.*, 505 U.S. at 395 (citation modified).

18

Next, S2687 is underinclusive, revealing that Hawaii's "interest does not rise to the level of being compelling." *281 Care Comm.*, 766 F.3d at 785 (citation modified). And S2687's regulatory patchwork leaves inexplicable gaps in enforcement that also raise serious "doubts about whether" Hawaii is actually "pursuing the interest it invokes, rather than disfavoring a particular speaker or viewpoint." *Fox*, 937 F.3d at 1228.

First, S2687 targets text messages or emails between two people, but exempts "sundry items such as bumper stickers" that could be viewable to many across the state. HRS § 11-302. Second, the law grants a broad exemption to "broadcaster[s]" and "interactive computer service[s]." HRS § 11-303(b). That means *all* broadcasters and interactive computer services escape much regulation under S2687, inexplicably exempting the "vast democratic forums of the Internet," and many large platforms, like Facebook, where people get political information. *See Packingham v. North Carolina*, 582 U.S. 98, 104 (2017). These entities can host and post whatever they want, unless they were involved in the creation of the media or had the intent to deceive. But O'Brien can't even share a digitally altered image in a private text message. This discrepancy is irrational because "the exempted speech implicates the very same concerns as the regulated speech." *Chaker*, 428 F.3d at 1226–27.

S2687 is also overinclusive for the same reasons that it's unconstitutionally overbroad. *See infra* § II.A (describing overbreadth). To take the most glaring example, S2687 doesn't further any interest as applied to Plaintiffs' speech involving satirical memes and parody campaign ads. That speech receives the

19

utmost First Amendment protection, but S2687 criminalizes it without even requiring a showing of actual harm.

## II.    S2687 is overbroad and vague.

When a statute regulates speech, the Supreme Court has "lowered [the] very high bar" to facial challenges. *Moody v. NetChoice*, 603 U.S. 707, 723 (2024). If a "statute prohibits a substantial amount of protected speech relative to its plainly legitimate sweep, then society's interest in free expression outweighs its interest in the statute's lawful applications, and a court will hold the law facially invalid." *United States v. Hansen*, 599 U.S. 762, 770 (2023) (citation modified).

A law can also be overbroad if it's vague. Yet the test for vagueness is distinct: a law is facially void-for-vagueness when it (1) fails to "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly;" or (2) fails to "provide explicit standards for those who apply them." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972); *accord Edge v. City of Everett*, 929 F.3d 657, 664–65 (9th Cir. 2019). "When speech is involved, rigorous adherence to those requirements is necessary to ensure that ambiguity does not chill protected speech." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253–54 (2012).

Here, S2687 applies to much protected speech (*infra* § A). But it's unclear whether it applies to other protected speech (*infra* § B). Plus, its vague proscriptions give officials unbridled enforcement discretion. So, in addition to bringing overbreadth claims, Plaintiffs bring as-applied and facial vagueness claims too. *See Tucson v. City of Seattle*, 91 F.4th 1318, 1329 (9th Cir. 2024).

20

**A.**    **S2687 regulates a substantial amount of speech.**

"The first step in the proper facial [overbreadth] analysis is to assess"
S2687's "scope." *Moody*, 603 U.S. at 724. It "specifically targets speech" by
facially regulating images, videos, and audio recordings about proscribed topics.
*See Kohls*, 752 F. Supp. 3d at 1195. Yet it does *not* regulate any non-expressive
conduct. In other words, every application of the law regulates speech.

At step two, the "question is whether a substantial number of the law's
applications are unconstitutional, judged in relation to the statute's plainly
legitimate sweep." *Moody*, 603 U.S. at 723 (citation modified). Here, the answer is
yes. Start with satire and parody—fictitious speech protected under the First
Amendment. *Hustler Mag.*, 485 U.S. at 54–56. The law sweeps up, for example,
The Bee's articles about President Trump, Vice President Harris, Tim Walz, and
JD Vance. The law also covers much exaggeration and "rhetorical hyperbole
which has traditionally added much to the discourse of our Nation." *Knievel*, 393
F.3d at 1074 (citation modified). And it sweeps in content that merely references a
candidate "by implication." HRS § 11-302. So Hawaii criminalizes the common
memes circulated during the 2024 election showing people wearing "Swifties for
Trump" shirts.[1]

The broad definition of "advertisement" extends S2687's reach in staggering
ways, too. It covers "any communication" conveyed by "any means." HRS §§ 11-
302, 11-303(h). That includes posts on private social-media accounts and text

---

[1] Donald J. Trump (@realDonaldTrump), Truth Social (Aug. 18, 2024),
https://bit.ly/4drwhZA.

messages and emails to friend groups (including people who may have already voted). S2687 "applies to a broad range of content that does not pose a realistic threat to the maintenance of fair and free elections." *Lucas*, 34 N.E.3d at 1255; *see also Alvarez*, 567 U.S. at 722–23 (plurality) ("Here the lie was made in a public meeting, but the statute would apply with equal force to personal, whispered conversations within a home.").

What's more, S2687's liberal enforcement provisions are a recipe for chilling untold amounts of speech, including speech that does not clearly fall under the statute. It isn't just offended candidates who can sue—"any organization that represents the interest of voters likely to be deceived by the distribution of materially deceptive media"—can claim damages, equitable relief, and attorney's fees. HRS §§ 11-304(a), (b). With no definition of "organization," S2687 effectively allows "[a]nyone [to] file a complaint," which drastically increases the chances of rivals and activists filing lawsuits, regardless of whether the content falls under S2687's scope. *281 Care Comm.*, 766 F.3d at 792; *Lucas*, 34 N.E.3d at 1256 (same). And as soon as such a suit is filed, "damage is done." *281 Care Comm.*, 766 F.3d at 792. Thus, S2687 is "overbroad because … there is nothing to prohibit the filing of a complaint against speech that may later be found wholly protected." *Id.*

**B.    S2687's vagueness covers even more protected speech.**

A law is unconstitutionally vague "if its prohibitions are not clearly defined." *Grayned*, 408 U.S. at 108. The doctrine requires fair notice about what the law proscribes and guardrails to ensure that "those enforcing the law do not act

22

in an arbitrary or discriminatory way." *Fox Television*, 567 U.S. at 253. While these requirements stem from the Due Process Clause, "vagueness concerns are more acute when a law implicates First Amendment rights" because of the risks of chilled speech and discriminatory enforcement. *Butcher v. Knudsen*, 38 F.4th 1163, 1169 (9th Cir. 2022). In this context, there is an "enhanced standard" requiring "an even greater degree of specificity and clarity of laws." *Edge*, 929 F.3d at 664–65. "These concerns are magnified even further when a law regulates political speech." *Butcher*, 38 F.4th at 1169.

S2687's prohibition on media distributed "in reckless disregard of the risk of harming" reputation or electoral prospects or "changing … voting behavior" is vague. That's because the terms "risk of harming" and "changing" are inherently subjective. Consider an AI-generated image of President Trump endorsing Gov. Green. *See* PCSUF ¶ 22. If the ad appeals to voters aligned with President Trump, does it have a risk of harming Gov. Green's prospects? Or would it make Gov. Green appear less favorable to those who dislike President Trump's policies? Would it harm his reputation to have President Trump's endorsement? Or would an endorsement from the president help his electoral chances? The law provides "no principle for determining when" speech will "pass from the safe harbor … to the forbidden." *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1049 (1991).

Additionally, vagueness lies in what constitutes modifications by "[d]igital technology." HRS § 11-303(h). The statute leaves this term undefined. It could encompass any alteration of an image, no matter how minor. Using an iPhone to darken an image to portray a candidate in a less favorable light could be an

alteration by digital technology. So too could The Bee using photoshop to add a chip bag to Vice President Harris's hand. *See* PCSUF ¶ 37. This term's broad application would sweep up vast amounts of protected speech and cause people to refrain from posting content with even minor modifications.

The law's vagueness also violates the content and viewpoint neutrality requirements because it gives enforcement authorities "unbridled discretion." *Kaahumanu v. Hawaii*, 682 F.3d 789, 806 (9th Cir. 2012). Simply, "an indeterminate prohibition carries with it the opportunity for abuse." *Minn. Voters All. v. Mansky*, 585 U.S. 1, 21 (2018) (citation modified). Enforcement officials "must be guided by objective, workable standards." *Id.* But S2687's terms, including "materially deceptive," provide insufficient guardrails. Run-of-the-mill campaign ads attacking "a candidate's voting record," for example, often contain exaggerations. *Lucas*, 34 N.E.3d at 1256. If courts must undertake an "in-depth analysis of legislative history" to determine the truth or falsity of digitally altered content, that gives enforcement authorities much discretion to determine which posts violate the law. *Id.* "[T]his myriad of factors lends itself to discriminatory enforcement," where activists and government officials alike "resort to enforcing the [law] only against those messages the officer or the public dislikes." *Berger v. City of Seattle*, 1029, 1048 (9th Cir. 2009) (citation modified).

## III. This Court should grant Plaintiffs' requested relief.

This Court should permanently enjoin S2687 and declare it unconstitutional. Permanent injunctive relief requires a showing of (1) irreparable injury; (2) inadequacy of other remedies; and (3) the balance of hardships and (4) the public

interest favor an injunction. *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 1002 (9th Cir. 2023). Plaintiffs satisfy these factors. "[C]onstitutional violations cannot be adequately remedied through damages." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1059 (9th Cir. 2009). Indeed, "[t]he harm is particularly irreparable where, as here, a plaintiff seeks to engage in political speech." *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009). Further, Hawaii's interests are "minimal when measured against the gravity of First Amendment values at stake." *Kohls*, 752 F. Supp. 3d at 1198. And because the law threatens the rights of both Plaintiffs and the public at large, the balance of equities and public interest "tip sharply in favor of enjoining [the law]." *Klein*, 584 F.3d at 1208. In this case, "all citizens have a stake in upholding the Constitution." *Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023) (citation modified). For all these reasons, this Court should grant declaratory relief too. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 289–90 (1995) (explaining court always has discretion to enter declaratory relief).

## CONCLUSION

This Court should grant Plaintiffs' motion for summary judgment.

Respectfully submitted this 8th day of August, 2025.

/s/ Shawn A. Luiz
Shawn A. Luiz

Philip A. Sechler*
DC Bar No. 426358
Mathew W. Hoffmann*
VA Bar No. 100102
ALLIANCE DEFENDING FREEDOM
*Admitted pro hac vice

Attorneys for Plaintiffs

The Babylon Bee, LLC
and Dawn O'Brien

# CERTIFICATE OF SERVICE

I certify that on August 8, 2025, I electronically filed the foregoing using the CM/ECF system, which will give notice of such filing to all counsel of record as follows:

Ewan C. Rayner
Deputy Attorney General
DEPARTMENT OF THE ATTORNEY GENERAL
425 Queen Street
Honolulu, HI 96813
ewan.rayner@hawaii.gov

**Counsel for Defendants ANNE E. LOPEZ, in her official capacity as Attorney General of Hawai'i; DAVID CHEE, in his official capacity as Chair of the Campaign Spending Commission; NEAL HERBERT, in his official capacity as Vice Chairman of the Campaign Spending Commission; JON ITOMURA; BARBARA POLK; and DANTON WONG, in their official capacities as members of the Campaign Spending Commission**

DANA M.O. VIOLA
DEREK T. MAYESHIRO
JACQUELINE DE LEEUW HUANG
1001 Bishop Street, Suite 2020
Honolulu, Hawai'i 96813
dmayeshiro@honolulu.gov
j.deleeuwhuang@honolulu.gov

**Counsel for Defendant STEVEN S. ALM**

Dated: August 8, 2025

/s/ Shawn A. Luiz
Shawn A. Luiz

Philip A. Sechler*
Mathew W. Hoffmann*
ALLIANCE DEFENDING
FREEDOM

**Counsel for Plaintiffs**

*Admitted pro hac vice*

27