Shawn A. Luiz (6855)
ATTORNEY AT LAW
733 Bishop Street, Suite 1280
Honolulu, HI 96813
T: (808) 538-0500
F: (808) 564-0010
attorneyluiz@gmail.com

Philip A. Sechler*
DC Bar No. 426358
Mathew W. Hoffmann*
VA Bar No. 100102
ALLIANCE DEFENDING FREEDOM
44180 Riverside Pkwy
Lansdowne, Virginia 20176
T: (571) 707-4655
psechler@ADFlegal.org
mhoffmann@ADFlegal.org
*Admitted pro hac vice

Attorneys for Plaintiffs
The Babylon Bee, LLC
and Dawn O'Brien

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

The Babylon Bee, LLC, et al.,

*Plaintiffs*,

v.

Anne E. Lopez, et al.,

*Defendants*.

**Case No.** 1:25-cv-00234-SASP-KJM

**PLAINTIFFS' COMBINED MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

**Hearing Date:** December 3, 2025
**Time:** 9:00 a.m.
**Judge:** Honorable Shanlyn A.S. Park

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................... ii

INTRODUCTION ............................................................................... 1

ARGUMENT .................................................................................... 2

I.    Plaintiffs have standing. .............................................................. 2

    A.    Plaintiffs intend to engage in protected political speech ...................... 2

    B.    S2687 at the very least arguably proscribes Plaintiffs' speech. ............. 3

        1.    Defendants' proposed narrowing construction doesn't
            defeat standing. .......................................................... 4

        2.    S2687 prohibits satire and parody. ............................... 6

    C.    Plaintiffs have a credible fear of enforcement. ................................ 8

II.   S2687 infringes on Plaintiffs' free-speech rights. ........................... 9

    A.    S2687 facially regulates based on content and viewpoint. .................. 9

    B.    S2687 also triggers strict scrutiny because it compels speech. ............ 10

    C.    S2687 fails strict scrutiny. ...................................................... 11

        1.    The law flunks narrow tailoring ................................... 11

        2.    S2687 serves no compelling interest. ........................... 14

III.  S2687 is overbroad and vague. .................................................. 16

    A.    S2687 is overbroad. ................................................................. 16

    B.    S2687's vagueness covers even more protected speech. .................... 17

IV.   Plaintiffs can recover attorney's fees from all Defendants. ............. 18

CONCLUSION ................................................................................. 19

CERTIFICATE OF SERVICE AND WORD COUNT ........................................ 20

# TABLE OF AUTHORITIES

**<u>Cases</u>**

*ACLU of Nevada v. Heller*,
    378 F.3d 979 (9th Cir. 2004) ............................................................4

*American Beverage Association v. City & County of San Francisco*,
    916 F.3d 749 (9th Cir. 2019) ..........................................................14

*American Encore v. Fontes*,
    2025 WL 2647590 (9th Cir. 2025) ........................................ 2, 3, 8

*Animal Legal Defense Fund v. Wasden*,
    878 F.3d 1184 (9th Cir. 2018) ........................................................12

*Arizona Free Enterprise Club's Freedom Club PAC v. Bennett*,
    564 U.S. 721 (2011)........................................................................10

*Brown v. Entertainment Merchants Association*,
    564 U.S. 786 (2011) ............................................................... 13, 15

*Buckley v. Valeo*,
    424 U.S. 1 (1976).............................................................................5

*Buffin v. California*,
    23 F.4th 951 (9th Cir. 2022) ...........................................................18

*Bullfrog Films, Inc. v. Wick*,
    847 F.2d 502 (9th Cir. 1988) ..........................................................18

*California Pro-Life Council, Inc. v. Getman*,
    328 F.3d 1088 (9th Cir. 2003) ........................................................11

*California Trucking Association v. Bonta*,
    996 F.3d 644 (9th Cir. 2021) ............................................................8

*Citizens United v. Federal Election Commission*,
    558 U.S. 310 (2010)........................................................................11

*Farah v. Esquire Magazine*,
    736 F.3d 528 (D.C. Cir. 2013).........................................................7

*Federal Election Commission v. Cruz,*
    596 U.S. 289 (2022)...............................................................................15

*Federal Election Commission v. Wisconsin Right To Life, Inc.,*
    551 U.S. 449 (2007).................................................................................5

*Foti v. City of Menlo Park,*
    146 F.3d 629 (9th Cir. 1998) ...................................................................4

*Garcia v. County of Alameda,*
    150 F.4th 1224 (9th Cir. 2025) ...............................................................12

*Human Life of Washington Inc. v. Brumsickle,*
    624 F.3d 990 (9th Cir. 2010) ..................................................................11

*Hutto v. Finney,*
    437 U.S. 678 (1978)................................................................................18

*Iancu v. Brunetti,*
    588 U.S. 388 (2019).................................................................................9

*Kohls v. Bonta,*
    2025 WL 2495613 (E.D. Cal. Aug. 29, 2025) ......... 1, 7, 9, 10, 11, 14, 16, 18

*Kohls v. Ellison,*
    2025 WL 66765 (D. Minn. Jan. 10, 2025) ...............................................7

*Matsumoto v. Labrador,*
    122 F.4th 787 (9th Cir. 2024) ..................................................................8

*Menotti v. City of Seattle,*
    409 F.3d 1113 (9th Cir. 2005) ................................................................11

*Moody v. NetChoice, LLC,*
    603 U.S. 707 (2024)................................................................................10

*National Institute of Family & Life Advocates v. Becerra,*
    585 U.S. 755 (2018)................................................................................12

*Planned Parenthood of Idaho, Inc. v. Wasden,*
    376 F.3d 908 (9th Cir. 2004) ...................................................................5

*R.A.V. v. City of St. Paul,*
  505 U.S. 377 (1992)............................................................ 10, 14

*Riley v. National Federation of the Blind of North Carolina, Inc.,*
  487 U.S. 781 (1988)................................................................14

*San Francisco County Democratic Central Commitee v. Eu,*
  826 F.2d 814 (9th Cir. 1987) ..................................................14

*Smith v. Helzer,*
  95 F.4th 1207 (9th Cir. 2024) .................................................11

*State v. Demello,*
  361 P.3d 420 (Haw. 2015).........................................................5

*Susan B. Anthony List v. Driehaus,*
  573 U.S. 149 (2014)...................................................................8

*Turner Broadcasting System, Inc. v. Federal Communications Commission,*
  512 U.S. 622 (1994)..................................................................11

*United States v. Alvarez,*
  567 U.S. 709 (2012)..................................................................16

*Vasquez Perdomo v. Noem,*
  148 F.4th 656 (9th Cir. 2025) ....................................................2

*Video Software Dealers Association v. Schwarzenegger,*
  556 F.3d 950 (9th Cir. 2009) ...................................................15

*X Corp. v. Bonta,*
  116 F.4th 888 (9th Cir. 2024) ...............................................9, 11

*Yamada v. Snipes,*
  786 F.3d 1182 (9th Cir. 2015) ................................................4, 5

*Yamada v. Weaver,*
  872 F. Supp. 2d 1023 (D. Haw. 2012).......................................5

## **Statutes**

HRS §11-302.................................................................................4

HRS §11-303(b)............................................................................9

HRS §11-304(b)(3) ...................................................................................18

HRS §11-412(e) .......................................................................................18

**Rules**

Federal Rule of Civil Procedure 54(d)(2) ...............................................18

## INTRODUCTION

S2687 is an unconstitutional hammer. It effectively allows anyone to sue Plaintiffs for their political speech. The law threatens these lawsuits as well as jail time, fines, damages, injunctions, and attorneys' fees for texting even a single meme. While S2687's plain terms target Plaintiffs and give them standing, Hawaii tries to avoid accountability by narrowly construing S2687. But this construal rewrites the statute. Even so, Hawaii's revisions would still censor Plaintiffs' express advocacy. The statute's broad enforcement provisions and Hawaii's examples show how it applies to The Bee's satire and parody. Hawaii doesn't dispute that S2687 discriminates based on content. It discriminates based on viewpoint, too, by targeting content that "risk[s]" harming but not content that helps. So it must meet strict scrutiny.

But this hammer has no nail. Hawaii has a host of less speech-restrictive alternatives, like media literacy campaigns and improving political knowledge to achieve its aims, as the expert opinions here show. What's more, as Plaintiffs' expert Dr. Lucas demonstrates, Hawaii's concerns about "materially deceptive media" are "speculative." Lucas ¶7.

Less than two months ago, a court permanently enjoined California's similar law. *Kohls v. Bonta*, 2025 WL 2495613, at *1 (E.D. Cal. Aug. 29, 2025). That law could not survive strict scrutiny because the state had many other less restrictive alternatives, like targeting legally cognizable harms, "fund[ing] its own AI educational campaigns[,] or form[ing] committees on combatting false or deceptive election content." *Id.* at *5. In line with *Bonta*, this Court should grant

1

Plaintiffs' motion, deny Hawaii's motion, and permanently enjoin Defendants from enforcing S2687.

## ARGUMENT

## I.    Plaintiffs have standing.

The Ninth Circuit has "long recognized that First Amendment cases raise unique standing considerations, that tilt dramatically toward a finding of standing." *Am. Encore v. Fontes*, 2025 WL 2647590, at *9 (9th Cir. 2025) (citation modified). That's "because a chilling of the exercise of First Amendment rights is, itself, a constitutionally sufficient injury." *Id.* (citation modified). For a pre-enforcement challenge, three factors establish injury: "[1] an intention to engage in a course of conduct arguably affected with a constitutional interest, but [2] proscribed by a statute, and [3] there exists a credible threat of prosecution thereunder." *Id.* "Only one plaintiff with standing is sufficient for Article III." *Vasquez Perdomo v. Noem*, 148 F.4th 656, 674 (9th Cir. 2025).

## A.    Plaintiffs intend to engage in protected political speech.

Hawaii quibbles with the details Plaintiffs provided about their future speech. Hawaii Mem. 8 (Doc. 35-1). But the Ninth Circuit recently rejected a similar argument when it comes to political speech. *Fontes*, 2025 WL 2647590, at *11. "[I]t is inherent in the very nature of political and electoral expressive conduct that Plaintiffs may not know which political issues may become relevant … at the polls." *Id.* There, the Ninth Circuit held that the plaintiffs did not have to "state the exact nature of the political speech in which they intend to engage in the next election" for two reasons. *Id.* at *10. First, the "2024 election cycle has passed, and

the issues and candidates for the next election cycle are not yet teed up sufficiently to specify in which particular speech or advocacy Plaintiffs intend to engage." *Id.* at *11 n.9. Second, "the vagueness and overbreadth" of the law prohibiting activity that has the "effect" of "'threatening, harassing, intimidating, or coercing voters' could conceivably reach any speech related to elections and politics." *Id.* at *11.

Like the *Fontes* plaintiffs, The Bee and O'Brien have engaged in political speech in the past and will do so again. PCSUF ¶¶ 6-7, 18, 22. Also, like the *Fontes* plaintiffs, Plaintiffs cannot divine candidates and ballot issues for the 2026 election, let alone other future elections. But they undisputedly plan to speak about them. *See* O'Brien Opp. Decl. ¶4; Dillon Opp. Decl. ¶4. Finally, S2687's overbreadth and vagueness extend its reach to nearly any speech about a Hawaii election. Pls. Mem. 20-24 (Doc. 32-1). Hawaii doesn't dispute that effectively anyone can file a lawsuit for a violation. *See id.*

## B.    S2687 at the very least arguably proscribes Plaintiffs' speech.

"A plaintiff must only show that [its] future conduct is arguably proscribed by the statute it wishes to challenge." *Fontes*, 2025 WL 2647590 at *12 (citation modified). For standing, the court must "accept Plaintiffs' interpretation of the statute so long as it is an arguable interpretation." *Id.* Hawaii tries to defeat this element by offering a narrowing construction and arguing that S2687 doesn't cover satire and parody. Neither argument works. Additionally, Plaintiffs have standing for their vagueness claim because S2687's "limits are unclear," which means that "Plaintiffs' conduct may violate the statute." *Isaacson v. Mayes*, 84 F.4th 1089, 1099 (9th Cir. 2023).

3

### 1. Defendants' proposed narrowing construction doesn't defeat standing.

Hawaii's proposed narrowing construction effectively rewrites the statutory definition of "advertisement." But "[f]ederal courts are without power to adopt a narrowing construction of a state statute unless such a construction is reasonable and readily apparent." *ACLU of Nevada v. Heller*, 378 F.3d 979, 986 (9th Cir. 2004) (citation modified). Neither can a federal court "adopt an interpretation precluded by the plain language of the ordinance." *Foti v. City of Menlo Park*, 146 F.3d 629, 639 (9th Cir. 1998).

Under Hawaii law, an "advertisement" is "any communication" that "[i]dentifies a candidate directly or by implication" and "[a]dvocates or supports the nomination, opposition, or election of the candidate." HRS §11-302. Hawaii seeks to redefine a communication as an "advertisement" "only if it is susceptible of no reasonable interpretation other than as an appeal to vote for or against a specific candidate," *i.e.*, "express advocacy." Hawaii Mem. 6. That would require both adding to and deleting language from the statute. This Court should thus decline to adopt Hawaii's "strained statutory construction." *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 932 (9th Cir. 2004).

As Hawaii concedes, the Ninth Circuit did not adopt this Court's prior narrowing construction, which is the same one Hawaii now offers. *See* Hawaii Mem. 6 n.1 (citing *Yamada v. Snipes*, 786 F.3d 1182, 1192 (9th Cir. 2015)). In fact, the Hawaii Attorney General argued that the narrowing gloss was "unnecessary." *Yamada v. Snipes*, No. 12-15913, Defendants-Appellees'

Answering Br. 46 n.36 (Sept. 12, 2012). The Ninth Circuit agreed. *Yamada*, 786 F.3d at 1192.

Hawaii courts "do not resort to legislative history to cloud a statutory text that is clear." *State v. Demello*, 361 P.3d 420, 424 (Haw. 2015). This Court can't either. But Hawaii's cited legislative history indicates only that the Hawaii legislature adopted the phrase "to influence" in its definition of "expenditure" "in reliance on the Supreme Court's interpretation of the same terminology in federal law." *Yamada*, 786 F.3d at 1190; *see Buckley v. Valeo*, 424 U.S. 1, 79–81 (1976) (per curiam). The definition of "advertisement" doesn't use "influence" or other terms discussed in *Buckley*. Given the legislature's knowledge of *Buckley*, it "must have known how to" define express advocacy. *See Planned Parenthood*, 376 F.3d at 931 (citation modified). But it didn't in the definition of "advertisement."

Even under Hawaii's rewritten "advertisement" definition, Plaintiffs' speech aligns with the "advertisement[s]" this Court held constituted express advocacy. *See Yamada v. Weaver*, 872 F. Supp. 2d 1023, 1055 (D. Haw. 2012). The ads there "mention[ed] a candidate," ran "on election day or the day or two prior," and criticized a candidate for, among other things, not "show[ing] the aloha spirit." *Id.* Likewise, Plaintiffs plan to reference specific candidates (like Gov. Green), speak in the lead up to an election, and criticize candidates for various shortcomings. PCSUF ¶¶6–8, 22; O'Brien Opp. Decl. ¶4. And unlike the ads in another of Hawaii's cited cases, Plaintiffs' speech will depict a candidate and "take a position on a candidate's character, qualifications, or fitness for office." *FEC v. Wis. Right To Life, Inc.*, 551 U.S. 449, 470 (2007) (Op. of Roberts, C.J.).

## 2. S2687 prohibits satire and parody.

Hawaii claims S2687 doesn't ban satire and parody. Hawaii Mem. 7. That's wrong for three reasons.

First, Hawaii and its experts confirm S2687 regulates satire and parody. Hawaii cites as "high-profile political deepfakes" videos featuring these images of President Trump, Elon Musk, and Ron DeSantis's face with President Trump's hair and body (Hawaii CSUF ¶9; Hoffmann Opp. Decl. ¶9):

 

Hawaii's expert Alvarez also cites a "deepfake advertisement" that "clone[d] Vice President Harris's voice." Alvarez ¶29. In that video (the same one cited in *Bonta*), Harris is depicted as claiming she "is a 'diversity hire' because she is a woman and a person of color" and "doesn't know 'the first thing about running the country.'" Hoffmann Ex. C. Yet Hawaii argues its law is directed to these "high-profile political deepfakes" that constitute tongue-in-cheek satire and parody.

Second, satire and parody draw their power from their proximity to the original, Dillon ¶21, which can confuse courts and people alike. Satire "remains

6

one of the most imprecise of all literary designations—a notoriously broad and complex genre whose forms are as varied as its victims." *Farah v. Esquire Mag.*, 736 F.3d 528, 536 (D.C. Cir. 2013) (citation modified).

As *Bonta* recognized, The Bee's content and the Harris video "have been mistaken by ordinary people as authentic." 2025 WL 2495613, at *6. As in *Bonta* and contrary to Hawaii's claim (at 22), Plaintiffs have offered evidence showing that people have thought The Bee's articles were real. President Trump's post of The Bee's headline shows he thought it was real at the time he posted it. RCSUF at 22 (Doc. 40). And the policies cited by Hawaii show that Snopes and USA Today base fact-checking decisions on how many people thought the article was true or at least had questions about it—which shows the universe of people who could sue under S2687. *Id.* A lawsuit against satire and parody, even if ultimately rejected, itself inflicts injury by chilling constitutionally protected speech. Pls. Mem. 22.

Third, the legislative history confirms that S2687's plain text extends to satire and parody. During the legislature's debate over S2687, the Motion Picture Association submitted a comment requesting an explicit "parody and satire" exemption. PCSUF ¶31. And the Hawaii Office of the Public Defender opposed S2687 on First Amendment grounds. *Id* ¶31. But the legislature declined to make any relevant amendments, indicating that S2687 sweeps up satire and parody.

*Kohls v. Bonta* thus controls this case, not *Kohls v. Ellison*, 2025 WL 66765 (D. Minn. Jan. 10, 2025), *appeal pending*. Hawaii's reliance on the *same* video discussed in *Bonta* and other clear examples of satire and parody show that its law applies to satire and parody, just as *Bonta* held California's does. *Contra* Hawaii

7

Mem. 22. Hawaii need not explicitly identify satire and parody in the law because its definition already applies to satire and parody, and the legislature declined to exempt it from the law.

### C.    Plaintiffs have a credible fear of enforcement.

"In evaluating the threat of enforcement," the Ninth Circuit examines "the threat posed *collectively* by the entire universe of potential complainants." *Fontes*, 2025 WL 2647590, at *14 (citation modified). In *Fontes*, the Attorney General and "election poll workers" could enforce the challenged law. *Id.* Hawaii's enforcement dragnet extends much further to authorize effectively anyone to sue and thus punish protected speech. Pls. Mem. 22. That "presents enough of a collective threat to create a credible or substantial risk of enforcement." *Fontes*, 2025 WL 2647590, at *14; *accord Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 164 (2014) (*SBA*) ("credibility of" "threat of enforcement is bolstered" when "any person" can "file a complaint").

Hawaii hasn't disavowed enforcement, which "is strong evidence that the state intends to enforce the law." *Cal. Trucking Ass'n v. Bonta*, 996 F.3d 644, 653 (9th Cir. 2021). Hawaii disputes (incorrectly) that S2687 doesn't criminalize Plaintiffs' speech. But even limiting S2687's application to express advocacy would stop Plaintiffs from speaking. *Supra* Section I.B. And the fact that the "statute is of recent vintage" means Defendants' "failure to *disavow* enforcement is sufficient to establish a credible threat of prosecution" *Matsumoto v. Labrador*, 122 F.4th 787, 797 (9th Cir. 2024) (citation modified).

II.    **S2687 infringes on Plaintiffs' free-speech rights.**

A.    **S2687 facially regulates based on content and viewpoint.**

Hawaii rightly doesn't dispute that S2687 regulates based on content by regulating speech about "candidate[s]" and ballot issues. *See* Hawaii Mem. 17. The law thus triggers strict scrutiny. *See X Corp. v. Bonta*, 116 F.4th 888, 903 (9th Cir. 2024). S2687 also triggers at least strict scrutiny because it discriminates based on viewpoint and speaker. Pls. Mem. 12. It bans content that has a risk of harming but not of helping, which is the "essence of viewpoint discrimination." *Bonta*, 2025 WL 2495613, at *2 (citing *Iancu v. Brunetti*, 588 U.S. 388, 393 (2019)). Similarly, the ban on speech that "advocates the passage or defeat" of a ballot issue also discriminates based on viewpoint because it doesn't proscribe content agnostic as to its passage but only content that expresses a certain *view* on the ballot issue. S2687's speaker-based exemptions show a content preference by immunizing broadcasters, cable operators, and interactive computer services, *contra* Hawaii Mem. 17 n.6—which can freely discuss and disseminate widely content in a news program but O'Brien can't text a friend a single digitally altered meme, *see* HRS §11-303(b).

Hawaii also argues that facial invalidation requires Plaintiffs to prove that the law is overbroad. Hawaii Mem. 12. That's wrong. When a law *facially* discriminates based on content or viewpoint, it "raise[s] the same First Amendment issues" "in every application," so strict scrutiny applies to the face of the law. *X Corp.*, 116 F.4th at 899. S2687 applies *only* to speech and even then *only* to speech about political candidates and ballot issues—speech that receives the "fullest" First

9

Amendment protection. *Ariz. Free Enter. Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 734 (2011). So S2687 triggers (and fails) strict scrutiny, regardless of whether it's also overbroad (which it is, as discussed below). *See R.A.V. v. City of St. Paul*, 505 U.S. 377, 381 (1992) ("unnecessary to consider" overbreadth when a law discriminates based on content and viewpoint).

This case presents a different issue than *Moody v. NetChoice, LLC*. 603 U.S. 707 (2024); *see* Hawaii Mem. 12. *Moody* never declared that overbreadth challenges are the only basis for facial challenges. Overbreadth is a finding as to a law's scope. *See* 603 U.S. at 724-25, 740. *Moody* was an overbreadth case because the plaintiff raised a facial challenge to laws "dealing with a broad swath of varied platforms and functions," some of which may not have implicated the online platforms' speech. 603 U.S. at 745 (Barrett, J., concurring). Thus, the Supreme Court remanded for full consideration of the laws' applicability to services like "direct messaging," "events management," "online marketplace," "financial exchanges" or even "ride-sharing." *Id.* at 724-25. The *Bonta* court rejected California's similar argument based on *Moody*. Just like California's law, S2687 "is content, viewpoint, and speaker based," so each application creates the same First Amendment implications. *Bonta*, 2025 WL 2495613, at *6.

**B.    S2687 also triggers strict scrutiny because it compels speech.**

Hawaii doesn't dispute that the disclaimer compels speech; rather, Hawaii says the compulsion only triggers exacting scrutiny. Hawaii Mem. 21. But "transparency laws that compel speech still trigger strict scrutiny, not exacting

10

scrutiny as the State maintains." *Bonta*, 2025 WL 2495613, at *7 (citing *inter alia* *X Corp.*, 116 F.4th at 902).

Campaign finance cases like *Smith v. Helzer*, 95 F.4th 1207 (9th Cir. 2024) cited by Hawaii are distinguishable for at least two reasons. First, political disclosure cases involve "campaign-related expenditures and contributions." *Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1104 (9th Cir. 2003). In other words, they allow "the public to 'follow the money.'" *Hum. Life of Wash. Inc. v. Brumsickle*, 624 F.3d 990, 997 (9th Cir. 2010). But this case is about pure political speech. Political donations are a form of speech, but courts have not held they receive the same level of protection as pure political advocacy. *See Getman*, 328 F.3d at 1104.

Second, S2687's compelled disclaimer doesn't inform voters about "the person or group who is speaking." *Citizens United v. FEC*, 558 U.S. 310, 368 (2010). Instead, it "compel[s] speakers to utter … a particular message," making it "subject to the same rigorous scrutiny" as other content-based laws. *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 642 (1994).

### C.    S2687 fails strict scrutiny.

#### 1.    The law flunks narrow tailoring.

Hawaii first argues that it need not show the "least restrictive means." Hawaii Mem. 19. But it takes that rule from an "intermediate scrutiny case" where the narrow tailoring requirement is "more relaxed." *Menotti v. City of Seattle*, 409 F.3d 1113, 1166 (9th Cir. 2005) (Paez, J., concurring in part). A content and viewpoint-discriminatory law must be the "least restrictive means." Pls. Mem. 15.

11

So Hawaii must show S2687 is "actually necessary to the solution" and that it lacks alternate methods to achieve its interest. *Garcia v. Cnty. of Alameda*, 150 F.4th 1224, 1233 (9th Cir. 2025). It hasn't. It claims that "[e]ducational campaigns would … be less effective" than its ban. Hawaii Mem. 20. But Hawaii's expert concedes that "strengthened media literacy skills and greater political sophistication" help people "identify political deepfakes" and reduce the likelihood that they'll believe deepfakes "are accurate." Alvarez ¶55. Lucas agrees. ¶44. Alvarez just frets that education "would require a large investment of resources." ¶55. But "[t]he First Amendment does not permit the State to sacrifice speech for efficiency." *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 585 U.S. 755, 775 (2018).

Hawaii also hasn't shown that S2687 regulates only "legally cognizable harm[s]." *Contra* Hawaii Mem. 14. That's the lesson from Hawaii's cited case, where the Ninth Circuit invalidated part of an Idaho law that prohibited journalists from making misrepresentations to gain entry to agricultural facilities. *Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184, 1194-98 (9th Cir. 2018). A law that "punishes speech where there is no fraud, no gain, and no valuable consideration," isn't constitutional because it's broad enough to cover some types of unprotected conduct as well. *Id.* at 1197. If Idaho's "real concern" were conduct like trespassing, it already had less-restrictive trespass laws to enforce that interest. *Id.* at 1196. And the *Wasden* court upheld other provisions of the same law prohibiting lies that achieved legally cognizable harm in the form of material gains for the speaker. *Id.* at 1199-201. As Plaintiffs have explained, S2687 goes far beyond

historically unprotected categories of speech, much like the *Wasden*
misrepresentation clause and very unlike the clauses targeting criminal conduct for
material gain. *See* Pls. Mem. 9-10.

Moreover, S2687—even if narrowly tailored, which it is not—rests on a
flawed premise: that digitally altered content poses unique problems because of its
alleged stickiness and rapid transmission. *See* Hawaii Mem. 19-20. The Supreme
Court case invalidating California's ban on selling violent videogames to minors
shows the flaw. *Brown v. Ent. Merchants Ass'n*, 564 U.S. 786 (2011). The Court
assumed violent games affected "children's feelings of aggression," but found
"those effects [were] both small and indistinguishable from effects produced by
other media." *Id.* at 800-01. Effects from violent games were "about the same" as
effects from violent television shows. *Id.* at 801. "California … (wisely) declined
to restrict Saturday morning cartoons," but instead "singled out the purveyors of
video games for disfavored treatment" with "no persuasive reason why." *Id.* at
801-02.

S2687 fails for the same reasons. As Lucas explains, digitally altered content
does not "pose a uniquely large threat of deceiving the public when compared to
existing forms of misinformation." Lucas ¶8. Lucas's study sits at the forefront of
that research. In fact, Alvarez cited it to argue that the "presentation of
misinformation in the form of a political deepfake is about as deceptive as
presentation of the same misinformation in text or audio form." Alvarez ¶21. So
Hawaii's expert agrees with Lucas.

13

Finally, S2687's disclaimer requirement fails narrow tailoring "because it drowns out Plaintiffs' message." *Bonta*, 2025 WL 2495613, at *7. Hawaii doesn't dispute that Plaintiffs accurately portrayed the size requirements. It just suggests Plaintiffs could modify their own speech to include the disclaimer "above or below" what they otherwise want to say. *See* Mem. 23-24. But that's precisely what Plaintiffs want to avoid. PCSUF ¶36. And courts "presume that speakers, not the government, know best both what they want to say and how to say it." *Riley v. Nat'l Federation of the Blind of N.C., Inc.*, 487 U.S. 781, 790–91 (1988). A "government-compelled disclosure that imposes an undue burden fails for that reason alone," even under exacting scrutiny and even when the warning "is factually accurate and noncontroversial." *Am. Beverage Ass'n v. City & Cnty. of S.F.*, 916 F.3d 749, 757 (9th Cir. 2019) (en banc).

### 2.    S2687 serves no compelling interest.

S2687 doesn't advance any compelling interest for at least three reasons. First, courts reject Hawaii's "highly paternalistic approach" of "restrict[ing] what the people may hear." *S.F. Cnty. Democratic Cent. Comm. v. Eu*, 826 F.2d 814, 836 (9th Cir. 1987) (citation modified). In *Eu*, California prohibited political party committees from endorsing primary candidates to ostensibly protect voters "from confusion and undue influence when they vote in primaries." *Id.* at 835. But the Ninth Circuit had "greater faith in the ability of individual voters to inform themselves." *Id.* at 836. So too here. No matter Hawaii's interest, its response "cannot consist of selective limitations upon speech," especially political speech. *R.A.V.*, 505 U.S. at 392; Pls. Mem. 17-18.

14

Second, Hawaii has failed to show that digitally modified content causes any harm justifying burdens on First Amendment rights. Again, *Brown* is instructive. To justify its ban, California cited studies showing violent games were "significantly linked to increases in aggressive behaviour." *Video Software Dealers Ass'n v. Schwarzenegger*, 556 F.3d 950, 963 (9th Cir. 2009), *aff'd sub nom. Brown*, 564 U.S. 786. But evidence of "correlation" wasn't enough because it did "not prove that violent video games cause minors to act aggressively." *Brown*, 564 U.S. at 800.

There's no proof of causation here either. Hawaii frets that the most nefarious content "*can* be a powerful tool used to spread disinformation and misinformation" which "*can* increase political tensions." Hawaii Mem. 18 (emphasis added). Hawaii's experts also speculate that problems from "political deepfakes" "*may* be profound," "*can* introduce uncertainty," "*can* sow confusion," "*can* weaken democratic norms" etc. *E.g.*, Alvarez ¶¶15, 18-19 (emphasis added); West ¶¶32, 35 (emphasis added). They acknowledge that the research is nascent, Alvarez ¶24; West ¶22, and that "the effects of political deepfakes on voter trust and confidence in elections are understudied," Alvarez ¶24. Hawaii has failed to do anything but "simply posit the existence of the disease sought to be cured." *FEC v. Cruz*, 596 U.S. 289, 307 (2022).

Third, Hawaii provides no evidence that S2687 will advance electoral integrity. There's no evidence that S2687 will prevent "electoral related conflict and violence." Hawaii Mem. 18. Hawaii also can't cite a single instance of "fraud" from fake content that has ever occurred in Hawaii. *See id.* Instead, it cites

examples already addressed by other laws, like robocalls in New Hampshire, or not covered by S2687, like the image of President Trump and Musk and content in Slovakia. Hawaii CSUF ¶¶9-10 (Doc. 36); West ¶34 (noting New Hampshire robocaller was "prosecuted for voter suppression"). But it doesn't even argue—much less prove—that voters were misled in these far-flung locales or in Hawaii.

## III.    S2687 is overbroad and vague.

### A.    S2687 is overbroad.

Hawaii can't defend its law by pointing to categories of unprotected speech. S2687 extends far beyond those categories. Pls. Mem. 9-10. This shows that S2687 sweep is overbroad, not that it's mostly constitutional. *See, e.g.*, *United States v. Alvarez*, 567 U.S. 709, 717 (2012). After all, these narrower categories just prove that the State has less-restrictive alternatives.

Neither do the temporality and scienter requirements cure the statute's overbreadth. *Contra* Hawaii Mem. 13. Of course, Plaintiffs act knowingly or with reckless disregard that the depicted content is false. PCSUF ¶¶7, 24. But they have to evaluate vague terms like the "*risk* of harming" "reputation or electoral prospects" and "*risk* of … changing … voting behavior" to figure out what types of content are prohibited. Pls. Mem. 23 (emphasis added). "What may harm a candidate's electoral prospects versus help her is subjective because it depends on the recipient encountering the manipulated content." *Bonta*, 2025 WL 2495613, at *7.

Hawaii doesn't dispute that anyone can file a lawsuit to enforce S2687. *See* Pls. Mem. 22. Even if a court ultimately dismisses the case because the law doesn't

16

apply, the lawsuit itself does damage. *Id.* "Allowing almost any person to file a complaint creates the real risk of malicious lawsuits that could chill protected speech." *Bonta*, 2025 WL 2495613, at *3.

Hawaii concedes that S2687 criminalizes "communications distributed via private message services." Mem. 16. So O'Brien texting a single political meme to one of her friends could land her in jail. Despite Hawaii's fears of the "propagat[ion]" of deepfakes, *id.*, its law doesn't just target content that spreads widely. It regulates even single instances.

Hawaii also concedes that "digital technology" can essentially be any digital modification: "use of some kind of data processing device or tool (like a computer or a phone)." Mem. 25. That means any digital modification—no matter how minor—of an "advertisement" could cause someone to sue Plaintiffs for protected speech. Finally, S2687 remains overbroad even in its application to express advocacy. S2687 bans *all* of that protected political speech in the crucial period preceding an election.

### B.    S2687's vagueness covers even more protected speech.

S2687's subjective terms and unchecked discretion obscure the law's reach and leave ordinary citizens guessing about what violates the law. As discussed above, Hawaii's arguments about the mens rea miss the mark because Plaintiffs have the mens rea; they just have no way of knowing if their content "risks" harming electoral prospects or changing voting behavior. *Supra* Section III.A. Further, S2687's vagueness is deepened to the extent that it allows "positive" content. *See* Hawaii Mem. 17. Such "positive" content must still pose a risk to

reputation or electoral prospects. How can a speaker decide in advance which positive content presents enough of a risk that it is prohibited?

Limiting S2687's application to express advocacy again doesn't save the statute. Hawaii concedes that O'Brien's express advocacy depicting President Trump holding a sign saying "Josh Green for Governor" is "inherently ambiguous." Hawaii Mem. 7 n.3 Exactly. *See* Pls. Mem. 23. And anyone could file a lawsuit against O'Brien because of that ambiguity.

Speakers could guess what "risk of harming" and "changing … voting behavior" mean, "but one could never be confident that [others] would agree." *Bullfrog Films, Inc. v. Wick*, 847 F.2d 502, 513 (9th Cir. 1988). "Reasonable people can disagree about electoral strategy or speculate about harm and without objective, workable standards, [S2687] cannot withstand Plaintiffs' vagueness challenge." *See Bonta*, 2025 WL 2495613, at *8 (citation modified).

## IV.   Plaintiffs can recover attorney's fees from all Defendants.

Defendant Alm's arguments on attorney's fees are premature. Plaintiffs can recover them by separate "motion" "after the entry of judgment." Fed. R. Civ. P. 54(d)(2). Even so, Plaintiffs can recover attorney's fees against Defendant Alm. He undisputedly has the duty to prosecute violations of S2687. *See* HRS §§11-412(e), 11-304(b)(3). Courts routinely assess fees against official capacity Defendants. *See, e.g.*, *Hutto v. Finney*, 437 U.S. 678, 692 (1978); *Buffin v. California*, 23 F.4th 951, 962 (9th Cir. 2022).

## CONCLUSION

For these reasons and the reasons in Plaintiffs' opening brief, the Court should grant Plaintiffs' motion for summary judgment and deny Hawaii's cross-motion.

Respectfully submitted this 15th day of October, 2025.

*/s/ Shawn A. Luiz*
Shawn A. Luiz

*/s/ Mathew W. Hoffmann*
Philip A. Sechler\*
DC Bar No. 426358
Mathew W. Hoffmann\*
VA Bar No. 100102
ALLIANCE DEFENDING FREEDOM
\**Admitted pro hac vice*

*Attorneys for Plaintiffs*

The Babylon Bee, LLC
and Dawn O'Brien

## CERTIFICATE OF SERVICE AND WORD COUNT

Under Local Rule 7.4(e), I certify that the document complies with the word limit set by Court order of July 14, 2025 (Doc. 23) and has 4,612 words, including words contained in images.

I certify that on October 15, 2025, I electronically filed the foregoing using the CM/ECF system, which will give notice of such filing to all counsel of record as follows:

Ewan C. Rayner
Deputy Attorney General
DEPARTMENT OF THE ATTORNEY GENERAL
425 Queen Street
Honolulu, HI 96813
ewan.rayner@hawaii.gov
*Counsel for Defendants ANNE E. LOPEZ, in her official capacity as  Attorney General of Hawaiʻi; DAVID CHEE, in his official capacity as Chair of the Campaign Spending Commission; NEAL HERBERT, in his official capacity as Vice Chairman of the Campaign Spending Commission; JON ITOMURA; BARBARA POLK; and DANTON WONG, in their official capacities as members of the Campaign Spending Commission*

DANA M.O. VIOLA
DEREK T. MAYESHIRO
JACQUELINE DE LEEUW HUANG
1001 Bishop Street, Suite 2020
Honolulu, Hawaiʻi 96813
dmayeshiro@honolulu.gov
j.deleeuwhuang@honolulu.gov
*Counsel for Defendant STEVEN S. ALM*

Dated: October 15, 2025

/s/ Mathew W. Hoffmann

Shawn A. Luiz
Philip A. Sechler*
Mathew W. Hoffmann*
ALLIANCE DEFENDING FREEDOM
**Counsel for Plaintiffs**
*\* Admitted pro hac vice*